IN THE MATTER OF: CALVIN WILKERSON, A MINOR

No. 8114DC598

(Filed 4 May 1982)

1. **Parent and Child § 1— termination of parental rights—"willfully" leaving child in foster care for two years—evidence sufficient**

   By failing, for more than six years, to take steps to become responsible so as to be able to remove their child from foster care, respondents clearly fulfilled the willfulness requirement of G.S. 7A-289.32(3).

2. **Parent and Child § 1— termination of parental rights—failure of parents to show improvement of conditions**

   Petitioner provided clear and convincing evidence to support the finding and conclusion that respondents left their child in foster care for more than two consecutive years without showing that substantial progress had been made in correcting those conditions which led to the removal of their child for neglect even where shortly before trial respondents moved into a neat apartment since this late occurrence, in the wake of over six years of total absence of progress, did not compel a finding that substantial progress had been made.

3. **Parent and Child § 1— termination of parental rights—"diligent efforts" to strengthen parental relationship**

   The record fully supported a finding that petitioner made diligent efforts to encourage and strengthen the parental relationship as required by G.S. 7A-289.32(3) where the evidence showed over six and one-half years of continuous contact with respondents by petitioner through four social workers, attempts to counsel respondents on the steps to be taken to merit return of custody, and petitioner's continuous attempt to seek a positive response from respondents.

**4. Parent and Child § 1— termination of parental rights—previous orders binding on termination hearing—collateral estoppel properly applied**

  In a hearing concerning the termination of parental rights, the court properly ruled that all previous orders in the case were binding on it as to what those custody orders found to exist when they were entered. The conclusion in a previous custody order that the elements of G.S. 7A-289.32(3) had been met involved an issue which, under G.S. 7A-657, was essential to the court's judgment in the termination hearing, and collateral estoppel was therefore properly applied.

APPEAL by respondents from *LaBarre, Judge.* Judgment entered 16 February 1981 in District Court, DURHAM County. Heard in the Court of Appeals 5 February 1982.

Calvin Wilkerson was initially removed from the custody of respondents, Minnie and Jerry Wilkerson, and placed in the custody of petitioner, the Durham County Department of Social Services, in 1974, when he was two years and four months old. Respondents' four older minor children also were removed from their custody at that time. The order granting custody to petitioner found all of the children to be neglected because of (1) poor sanitation, food, clothing, and housekeeping in the home provided by respondents, and (2) excessive absences from school by the three school age children.

In May 1980 a hearing was held on petitioner's motion for review of the custodial status of the children. In an order dated 11 June 1980 the court made findings of fact and concluded that the factors set forth in G.S. 7A-289.32(3) existed as to the four youngest children. It ordered that the children remain in the custody of petitioner and that respondents cooperate with petitioner in arranging visits, refrain from threatening, assaulting, or verbally abusing any person from whom they received supportive services, and attend and participate in parent training programs offered by petitioner or by Parents Anonymous. Respondent Jerry Wilkerson was ordered to participate in alcoholic counseling, and respondent Minnie Wilkerson was ordered to participate in psychological therapy.

In September 1980, petitioner filed a petition for termination of parental rights as to Calvin. Following a hearing at which respondents were represented by court-appointed counsel, the court ordered respondents' parental rights to Calvin terminated pursuant to G.S. 7A-289.32(3).

Respondents appeal.

*Lester W. Owen, Durham County Attorney, by Assistant County Attorney James W. Swindell, for petitioner appellee.*

*Samuel Roberti, Guardian Ad Litem, appellee.*

*Lipton & Mills, by Stuart S. Lipton, for respondent appellants.*

WHICHARD, Judge.

Respondents' primary contention is that the evidence was insufficient to support termination of parental rights pursuant to G.S. 7A-289.32(3), and that their motions to dismiss at the close of petitioner's evidence and of all the evidence thus should have been allowed. We disagree, and thus affirm.

G.S. 7A-289.32(3) permits termination of parental rights upon a finding that:

> The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect, or without showing positive response within two years to the diligent efforts of a county department of social services . . . to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

The court made such a finding, and respondents excepted to it. They did not except, however, to any of the court's other forty-one findings of fact which set forth in detail the evidence presented at the termination hearing. Those findings are thus deemed to be supported by competent evidence and are conclusive on appeal. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590 (1962); *In re Smith,* 56 N.C. App. 142, 287 S.E. 2d 440 (1982); *Ply-Marts, Inc. v. Phileman,* 40 N.C. App. 767, 253 S.E. 2d 494 (1979).

The findings showed, in pertinent part, the following:

All respondents' minor children except the oldest, Gregory, have remained in foster care since their removal from respond-

ents in May 1974. Gregory was returned to respondents in 1976 and has continued to reside with them since that date. Petitioner made extensive efforts to get Gregory enrolled in school after his return to respondents, but Gregory has attended school only six days since that time despite respondents' agreement to keep him in school.

Calvin has been in four foster homes since 1974 and has lived 71% of his life in foster care. He is presently nine years old and is experiencing psychological problems as a result of his multiple placements. He is in need of one to two years of psychotherapy. His current foster parents would like to adopt him, and Calvin has expressed a desire to be adopted by them.

When petitioner filed for termination of parental rights in September 1980, respondents were living in a trailer which was rat infested and without minimum toilet facilities. Prior to living in the trailer, respondents resided in public housing from which they were evicted because of poor sanitation and health maintenance of their living unit. Respondents would have continued to live in the rat infested trailer had they not been evicted because of its unsanitary conditions. They have since moved into an apartment which petitioner observed in December 1980 to be neat and partially furnished.

During the first six months respondents' children were in foster care respondents made regular visits, but thereafter their contacts with petitioner and with their children began to decrease. Petitioner's representative Paul Kommell worked with respondents from January to October 1978 attempting to have Gregory enrolled in school. Petitioner's representative George Lipscomb was assigned to the case from November 1978 to February 1979. Lipscomb telephoned respondents and arranged two home visits with them. On the first visit Lipscomb did not find anyone home, but heard music coming from the house. The second visit was cancelled by respondent Jerry Wilkerson because he was "too drunk to talk." Lipscomb invited respondents· to come to his office for a visit, but respondents failed to keep the appointment. Lipscomb did meet respondent Minnie Wilkerson when she came to his office seeking emergency assistance. At no time during Lipscomb's assignment to the case did respondents ask to visit with Calvin.

Nancy Berson was assigned to the case from March 1979 through October 1980. Each time she met with respondents, she was threatened and verbally abused by Mrs. Wilkerson. She was therefore unable to establish any meaningful communication with respondents. She did continue to encourage respondents to visit with their children, but could not get them to agree to a scheduled visit until 12 October 1979. Respondents failed to attend the visit and failed to attend another scheduled visit on 15 February 1980. Mrs. Wilkerson did keep three appointments to visit with her children between December 1979 and July 1980. Mr. Wilkerson attended one of those visits but did not attend the May 1980 hearing or the termination hearing.

Cathy Brock was assigned to the case in October 1980 and went to great lengths to have respondents visit with their children on 30 December 1980, Calvin's birthday. Respondents failed to attend the visit. After entry of the June 1980 order Mr. Wilkerson enrolled in an alcoholic rehabilitation program, but he left without finishing it and failed to keep an appointment to establish a post-treatment plan. Mr. Wilkerson appeared to Ms. Brock to have been drinking in November 1980 when he came to her office requesting emergency assistance. Mrs. Wilkerson did not participate in psychological therapy and parent training programs as ordered by the court in June 1980.

Due to Mr. Wilkerson's alcoholism, he is not employed. Mrs. Wilkerson is employable, but has been employed only intermittently during the past six years. She did obtain employment in October 1980 and has been employed since that time. During the various periods of her employment, she failed to pay any support for the benefit of Calvin or any of her other children in foster care.

Petitioner made diligent efforts arranging visits between the minors and respondents, but respondents showed lack of interest in their children and lack of appreciation for petitioner's efforts.

As noted above, these findings are deemed supported by competent evidence. Respondents do not contend otherwise. They argue, instead, that the evidence failed to establish three of the requirements for termination of parental rights pursuant to G.S. 7A-289.32(3), *viz.*: (1) willfulness by the parents in leaving their child in foster care for more than two consecutive years; (2) lack

of substantial progress within two years in correcting the conditions which led to the removal of the child for neglect; and (3) diligent efforts by a county department of social services to encourage the parent to strengthen the parental relationship with the child.

[1] As to (1), the alleged absence of willfulness, respondents contend that because of their uneducated, illiterate, unemployed, and alcoholic states, and because petitioner never communicated to them a plan for Calvin's return, they never possessed the ability to remove Calvin from foster care and thus cannot be said to have left him there willfully. This argument has no merit. Although the factors recited may have rendered respondents unable to remove Calvin from foster care, the evidence shows nothing which prevented them from overcoming those factors and acquiring the ability to remove him. The court found that Mrs. Wilkerson was employable, yet had failed to obtain regular employment since Calvin was removed from her custody. It further found that Mr. Wilkerson was afforded the opportunity to participate in alcoholic counseling, but did not follow through on it. By failing, for more than six years, to take steps to become responsible so as to be able to remove Calvin from foster care, respondents clearly fulfilled the willfulness requirement of G.S. 7A-289.32(3). Further, any attempt by petitioner to develop and communicate to respondents a plan for Calvin's return would have been futile in light of the findings that meaningful communication with respondents could not be established and that respondents had consistently refused to cooperate with petitioner.

[2] As to (2), the contention that substantial progress had been made in correcting the conditions which led to Calvin's removal for neglect, respondents cite evidence indicating that at the time of the termination hearing they were no longer living in the rat infested trailer, but in a clean five room apartment containing adequate furniture. Respondents ignore the preponderance of the evidence, however, showing that they continued to live in filthy and unsanitary conditions from the time Calvin was taken from them until shortly before the termination hearing when they were forced to find new living quarters after being evicted from the trailer because of its unsanitary conditions. This late occurrence, in the wake of over six years of total absence of progress, did not compel a finding that substantial progress had been made.

Respondents total failure even to attempt improvement in their living conditions and solution of Mr. Wilkerson's drinking problems, coupled with their failure to maintain meaningful contact with Calvin despite over six years of efforts in that regard by petitioner, provided clear and convincing evidence to support the finding and conclusion that respondents "willfully left [Calvin] in foster care for more than two consecutive years without showing . . . that substantial progress [had] been made within two years in correcting those conditions which led to the removal of [Calvin] for neglect . . . ." G.S. 7A-289.32(3); *see In re Smith, supra.*

[3] As to (3), the contention that petitioner's efforts were not the "diligent efforts" required by the statute, the evidence deprives this argument, too, of merit. It shows over six and one-half years of continuous contact with respondents by petitioner through four social workers, and frequent efforts to arrange home visits with respondents and visits by respondents with Calvin and the other children. It further shows petitioner's attempts to counsel respondents on the steps to be taken to merit return of custody. Respondents refused to cooperate with any of the social workers, and they threatened and verbally abused one of them. Yet, despite respondents' total failure to respond to its efforts, petitioner continued to seek a positive response from them even after this termination proceeding was filed. It arranged, for example, a visit by respondents with their children in December 1980. Respondents, however, failed to attend.

The mere fact that no written or oral plan was formalized is not determinative of the issue of "diligent efforts of a county department of social services . . . to encourage the parent to strengthen the parental relationship to the child." G.S. 7A-289.32(3). The record is replete with evidence of "diligent efforts" by petitioner to strengthen respondents' relationships with their children. Petitioner's efforts were thwarted in every instance, however, by respondents. In sum, the record fully supports the finding that petitioner made diligent efforts to encourage and strengthen the parental relationship as required by G.S. 7A-289.32(3).

[4] Finally, the court ruled, on motion by petitioner, that all previous orders in the case were binding on it as to what those orders found to exist when they were entered. Respondents

argue that the court misapplied the doctrine of collateral estoppel and thereby predetermined the outcome of the termination hearing in view of the conclusion of law in the June 1980 order that the G.S. 7A-289.32(3) conditions for termination existed as to the four youngest children.

Collateral estoppel applies "where the second action between the same parties is upon a different claim or demand, [and] the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E. 2d 799, 805 (1973) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195, 198 (1877) ). The hearing to review the custody order and the hearing to terminate parental rights involved "different claim[s] or demand[s]" and the same parties. The June 1980 order continued custody in petitioner following a G.S. 7A-657 "review of custody order." G.S. 7A-657 requires that the court consider, *inter alia*, "when and if termination of parental rights should be considered." Thus, the conclusion in the June 1980 order that the elements of G.S. 7A-289.32(3) had been met involved an issue which, by statutory mandate, was essential to the court's judgment. Collateral estoppel was therefore properly applied with respect to the June 1980 conclusion that the G.S. 7A-289.32(3) conditions existed at that time.

Further, the ruling could not have prejudiced respondents because (1) they were allowed to present evidence regarding events which took place prior to entry of the June 1980 order, and (2) the court did not rely on the conclusion of law in the June 1980 order to support its termination of respondents' parental rights, but on evidence presented at the termination hearing which covered the entire period after Calvin's removal from respondents' custody.

Affirmed.

Judges CLARK and ARNOLD concur.