IN THE MATTER OF: CHRISTIE LYNN BALLARD

No. 485A83

(Filed 28 August 1984)

1. **Parent and Child § 1.6— termination of parental rights—consideration of prior adjudication of neglect**

Evidence of neglect by a parent prior to losing custody of a child, including a prior adjudication of neglect, may be admitted and considered by the trial court in subsequent proceedings to terminate parental rights on the ground of neglect. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.

2. **Parent and Child § 1.6— termination of parental rights—neglect—prior adjudication not determinative**

The trial court in a proceeding to terminate parental rights on the ground of neglect erred in treating a prior adjudication of neglect as determinative on the ultimate issue before it and in failing to make an independent determination of whether neglect authorizing termination of respondent's parental rights existed at the time of the termination hearing. G.S. 7A-289.32(2).

3. **Parental Rights § 1.6— termination for failure to pay costs of child care—finding of ability to pay**

The trial court erred in terminating respondent's parental rights under G.S. 7A-289.32(4) for failing to pay a reasonable portion of the cost of care for her child without finding that respondent has the ability to pay support.

APPEAL of right under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 63 N.C. App. 580, 306 S.E. 2d 150 (1983), affirming the order of *Judge William G. Jones* entered June 22, 1982, in District Court, MECKLENBURG County. Heard in the Supreme Court December 14, 1983.

*Ruff, Bond, Cobb, Wade and McNair, by Moses Luski and William H. McNair, for petitioner appellee, Mecklenburg County Department of Social Services.*

*Robert D. McDonnell, as Guardian ad Litem for Christie Lynn Ballard, appellee.*

*Richard F. Harris, III, for respondent appellant, Sandra Ballard Ard.*

MITCHELL, Justice.

This appeal arises from an order of the District Court, Mecklenburg County, ordering the parental rights of the respondent appellant terminated on the ground that she had neglected her child and on the separate ground that she had failed to pay a reasonable portion of the cost of care for the child for a continuous period of six months after it had been placed in the custody of the county department of social services. N.C.G.S. 7A-289.32(2) and (4). The respondent mother contends *inter alia* on appeal that the trial court erred by terminating her parental rights on the ground of failure to pay a reasonable portion of the costs of care for the child, since the trial court failed to determine specifically that the respondent had the ability to pay. She also contends that the trial court erred by admitting into evidence a prior order involving the same child which determined the child to be neglected and awarded custody to the Mecklenburg County Department of Social Services. For errors committed, we reverse the decision of the Court of Appeals which affirmed the order of the trial court.

The Mecklenburg County Department of Social Services (hereinafter "DSS") filed a juvenile petition on December 3, 1980, and an amended petition dated December 8, 1980, alleging that Christie Lynn Ballard was neglected and dependent. DSS assumed custody of Christie under a nonsecure custody order on December 3, 1980. A hearing was held before District Court

Judge Walter H. Bennett on January 5, 1981. On January 23, 1981, Judge Bennett entered an order adjudging the child to be a neglected and dependent child. The January 23 order included the following specific findings of fact:

. . . .

5. The mother is approximately 20 years old, has had no regular place to live since the birth of her child, and has always lived with other people.

. . . .

7. The mother recently spoke to Ms. Bullins of putting the child in an orphanage after Christmas, 1980. In June of 1980 the mother called the Department of Social Services and stated that she could not take care of the child and requested that said child either be placed in foster care or adopted. At the five-day hearing in this matter held December 8, 1980 [the mother], prior to the hearing, indicated to Mrs. Johnson that she was not able at the present time to care for this child.

8. In prior conversations with Mrs. Johnson, [the mother] admitted that in the last two years she had been leaving her child with anyone who would take her; that in November, 1980, she left the child at Dot Simpson's house, knowing said house had no heat; that she has had no permanent place to live since the birth of the child; that she has not been regularly employed since the birth of the child.

9. [The mother] was informed by Mrs. Johnson as to the availability of AFDC aid and encouraged by Mrs. Johnson to apply for such aid. Mrs. Johnson told [the mother] that she would assist [her] in obtaining such aid provided that [she] contacted her. [The mother] never applied for such aid and consequently did not receive any AFDC funds in November, 1980.

10. There was very little clothing for the child when she was picked up at the Bullins' residence by Mrs. Johnson pursuant to an immediate custody order issued by this Court. Subsequently, DSS has had to issue an emergency clothing check to the child in order to suitably clothe the child.

11. Ms. Ballard is currently working at the Classy Kitten, a topless lounge on East Morehead Street, Charlotte, North Carolina.

On December 9, 1981, DSS petitioned to terminate the parental rights of Russell Carlton and the respondent appellant, Sandra Ballard Ard. After a hearing in District Court, Judge William G. Jones entered an order on June 22, 1982 terminating the parental rights of Carlton and the respondent appellant Sandra Ballard Ard. The order of June 22 contained the following findings and conclusions:

. . . .

2. That shortly after the birth of the child, to wit in January, 1979, the Department of Social Services received a referral concerning the care which said child was receiving from her parents.

3. That additional referrals were received by the Department of Social Services; and in December of 1980 an immediate custody order was issued by this Court and the child was placed in the custody of the Department of Social Services.

4. That an adjudicatory hearing upon the petition alleging the child to be a neglected and dependent child was held by this Court on January 5, 1981, and extensive findings of fact were made by the Honorable Judge Walter H. Bennett, Jr., Judge Presiding; and that Judge Bennett found Christie Lynn Ballard to be a neglected child by virtue of the failure of the mother to properly care for said child; and that no appeal from the decision of Judge Walter H. Bennett, Jr. was taken.

5. That subsequent to the child coming into the care of the Department of Social Services, the mother, Sandra Elaine Ballard, entered, on June 8, 1981, into a parent/agency agreement with the Department of Social Services pursuant to the order of February 25, 1981, in which, among other things, she agreed to pay support of $8.00 a week for the child, to maintain steady employment and a stable residence; but that subsequent to June 8, 1981 (the date of the agreement), the respondent has had and lost at least three separate part time

jobs and has changed her residence six or seven times. Mrs. Ard was unable to work in January and February, 1982, because of medical problems.

6. That progress was made by Sandra Ard from time to time toward regaining custody of her child; and, in particular, progress became evident in July, 1981, when Sandra Ballard married Mr. Ard; but that in August, 1981, shortly after she was told that a temporary placement of Christie with her mother was going to be recommended by the Department of Social Services, Sandra Ard had a fight with her husband, went to Florida with another man and stayed there almost a month; and that again in February, 1982, Sandra Ard was advised by the Department of Social Services that because her situation had stabilized to a degree, a temporary placement would be recommended to begin on or about March 5, 1982; but that within a few days after being told that her child might be returned on a temporary basis, Sandra Ard again had a fight with her husband and left the residence of her in-laws and husband where she had been living since their marriage, and the placement of Christie with her was therefore never made.

7. That Christie Lynn Ballard has been in the custody of the Department of Social Services continuously since December of 1980 and the mother has worked from time to time and has paid absolutely no support for the child in the almost year and a half the child has been in the custody of the petitioner; and that neither has the respondent Russell Carlton paid any support whatever for the child, nor has he made any contact with the Department of Social Services concerning the child's condition and well-being.

8. That the mother of said child, Sandra Ballard Ard, has throughout the life of this child evidenced a propensity to let other things come before the care and responsibility of her child; and this child has been in foster care almost a year and a half during her three and one-half years of life; and this child is in need of permanent placement and a stable home, which this court is convinced cannot be provided by either respondent, Russell Carlton or Sandra Elaine Ballard Ard.

. . . .

10. That this Court adopts the findings and facts contained in the order of Judge Walter H. Bennett, Jr. dated January 23, 1981, and further adopts the conclusion of the Court that Sandra Elaine Ballard Ard neglected the child prior to her coming into the custody of the Department of Social Services.

. . . .

12. That based upon the foregoing, this Court concludes as a matter of law that grounds for termination of the parental rights of the mother, Sandra Elaine Ballard Ard, exist under the provisions of G.S. Sec. 7A-289.32(2) and (4); and with respect to Mr. Carlton under G.S. Sec. 7A(2), (4) and (6); and the Court further concludes that the best interests of Christie Lynn Ballard require that this Court terminate the parental rights of Sandra Elaine Ballard Ard and Russell Carlton with respect to said child.

The respondent Sandra Ballard Ard appealed to the Court of Appeals from the June 22, 1982 order of the trial court. The Court of Appeals affirmed with a dissenting opinion by Judge Wells. By reason of the dissent, the respondent appellant appealed to this Court as a matter of right under N.C.G.S. 7A-30(2).

[1] The respondent appellant assigns as error the trial court's determination that her parental rights should be terminated by reason of her neglect of the child. N.C.G.S. 7A-289.32(2). She first contends that the trial court erred during the hearing on the petition to terminate her parental rights by admitting into evidence over her objection the order of Judge Bennett entered on January 23, 1981, which determined that the respondent's child was a neglected and dependent child. We do not agree.

In the recent case of *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982), *appeal dismissed*, 459 U.S. 1139 (1983), a majority of this Court indicated, despite a vigorous dissent, that in ruling upon a petition for termination of parental rights for neglect, the trial court may consider neglect of the child by its parents which occurred before the entry of a previous order taking custody from them. This is so even though the parents have not had custody of the child from the time of the prior custody order until the time of the termination proceeding. Therefore, a prior adjudication of

neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect. However, the sufficiency of such a prior adjudication of neglect standing alone to support a termination of parental rights will be unlikely when the parents have been deprived of custody for any significant period before the termination proceeding. *See In re Barron,* 268 Minn. 48, 53, 127 N.W. 2d 702, 706 (1964).

We find persuasive the reasoning of the Court of Appeals of Indiana that:

> In most termination cases, as in this case, the children have been removed from the parents' custody before the termination hearing. It would be impossible to show that the children were currently neglected by their parents under these circumstances. To hold the State to such a burden of proof would make termination of parental rights impossible. We agree that the parents' fitness to care for their children should be determined as of the time of the hearing. The trial court must consider evidence of changed conditions. However, this evidence of changed conditions must be considered in light of the history of neglect by the parents and the probability of a repetition of neglect.

*In re Wardship of Bender,* 170 Ind. App. 274, 285, 352 N.E. 2d 797, 804 (1976). We conclude that the same reasoning applies to termination proceedings for neglect brought under North Carolina law.

Certainly, termination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer exist. *Id.* But to require that termination of parental rights be based only upon evidence of events occurring after a prior adjudication of neglect which resulted in removal of the child from the custody of the parents would make it almost impossible to terminate parental rights on the ground of neglect. We do not believe that the legislature intended any such result when it enacted N.C.G.S. 7A-289.32(2) and 7A-517(21). *See generally, e.g., In re Moore,* 306 N.C. 394, 293 S.E. 2d 127 (1982); *In re Graham,* 63 N.C. App. 146, 303 S.E. 2d 624, *disc. rev. denied,* 309 N.C. 320, 307 S.E. 2d 170 (1983).

We hold that evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. *In re Wardship of Bender*, 170 Ind. App. at 285, 352 N.E. 2d at 804. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*. Therefore, the trial court did not err in admitting the prior order of Judge Bennett adjudging the child to be neglected as evidence of neglect to be considered in the termination proceeding in the present case.

[2] The respondent appellant next contends in support of this assignment of error that the trial court erroneously treated the prior adjudication of neglect standing alone as binding upon it and as determinative on the issue of neglect at the time of the termination proceeding. The respondent's contention in this regard has merit.

The parties before us have strenuously debated whether the prior adjudication of neglect in the nonsecure custody order entered by Judge Bennett on January 23, 1981 was binding on the trial court during the termination hearing by reason of the doctrine of *res judicata* or the doctrine of collateral estoppel. *See generally, e.g., Settle v. Beasley*, 309 N.C. 616, 308 S.E. 2d 288 (1983); *King v. Grindstaff*, 284 N.C. 348, 200 S.E. 2d 799 (1973); *In re Wilkerson*, 57 N.C. App. 63, 291 S.E. 2d 182 (1982). We find it unnecessary to resolve these issues.

Assuming *arguendo* that, under either theory, a prior adjudication of neglect is binding upon the trial court in a later termination proceeding, no prejudice to the parents will result if the termination hearing is properly conducted. *See In re Wilkerson*, 57 N.C. App. at 69-70, 291 S.E. 2d at 186. Both the existence of the condition of neglect and its degree are by nature subject to change. Thus, an adjudication that a child was neglected on a particular prior day does not bind the trial court with regard to the issues before it at the time of a later termination hearing, i.e., the then existing best interests of the child and fitness of the parent(s) to care for it in light of all evidence of neglect and the probability of a repetition of neglect.

During a proceeding to terminate parental rights, the trial court must admit and consider evidence, find facts, make conclusions and resolve the ultimate issue of whether neglect authorizing termination of parental rights under N.C.G.S. 7A-289.32(2) and 7A-517(21) is present at that time. N.C.G.S. 7A-289.30(d). The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists at the time of the termination proceeding. N.C.G.S. 7A-289.30(e); *Santosky v. Kramer*, 455 U.S. 745 (1982). *See In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984) (There is no difference in the "clear and convincing evidence" test of *Santosky* and the "clear, cogent, and convincing evidence" test of the statute.). As the answer to this ultimate question must be based upon the then existing best interests of the child and fitness of the parent(s) to care for it in light of any evidence of neglect and the probability of a repetition of neglect, the trial court must admit and consider all evidence of relevant circumstances or events which existed or occurred *either before or after* the prior adjudication of neglect. Since parents in such situations have a full opportunity to present all evidence favorable to them relating to all relevant periods before and after the prior adjudication of neglect, the application of the doctrine of *res judicata* or the doctrine of collateral estoppel to the prior adjudication could not prejudice them. *See In re Wilkerson*, 57 N.C. App. at 69-70, 291 S.E. 2d at 186.

In the case before us, the trial court took evidence during the hearing on the petition to terminate parental rights. It is apparent from a comparison of that evidence with the termination order, however, that the trial court treated the prior adjudication of neglect as determinative on the ultimate issue before it and failed to make an independent determination of whether neglect authorizing termination of the respondent's parental rights existed at the time of the termination hearing. For this reason, that part of the opinion of the Court of Appeals affirming the trial court's order terminating the respondent's parental rights under N.C.G.S. 7A-289.32(2) for neglect must be reversed.

[3] The respondent next assigns as error that portion of the trial court's order terminating her parental rights under N.C.G.S. 7A-289.32(4) for failing to pay a reasonable portion of the cost of care for the child. A finding that a parent has ability to pay sup-

port is essential to termination for nonsupport on this ground. *See In re Clark*, 303 N.C. 592, 281 S.E. 2d 47 (1981). No such finding was made in this case. Therefore, that part of the opinion of the Court of Appeals affirming the action of the trial court in terminating the respondent's parental rights on this ground also must be reversed.

The respondent appellant mother has brought forward other assignments of error. Our disposition of the foregoing issues makes it unnecessary for us to consider or discuss those assignments.

The decision of the Court of Appeals affirming the order of the trial court entered June 22, 1982 terminating the parental rights of the respondent appellant Sandra Ballard Ard is reversed. The case is remanded to that Court with instructions to vacate the order of the trial court and to further remand the case to the District Court, Mecklenburg County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.