ARROWOOD, Judge.
Respondent-mother appeals from an order terminating her parental rights as to the juveniles "Hillary,"[1] "Brian," and "Greg" ("the children"). Though the order also terminates the parental rights of Hillary's father and Brian and Greg's father, the fathers are not parties to this appeal. We affirm.
I. Background
On 12 July 2013, Pamlico County Department of Social Services ("DSS") filed petitions alleging five-year-old Hillary, three-year-old Brian, and seven-month-old Greg were neglected and dependent juveniles under N.C. Gen. Stat. § 7B-101(9), (15) (2017). At the time the petitions were filed, the children resided with respondent-mother and their maternal grandmother, Diane. The petitions alleged that respondent-mother admitted to daily marijuana use and that she and Diane failed to provide adequate supervision for the children. Furthermore, after being denied access to the home over a period of several months, the DSS social worker was allowed into the residence on 11 July 2013 and observed it to be "cluttered," "filthy," and "not child proof." Upon the filing of the petitions, DSS took the children into nonsecure custody and placed them with Brian and Greg's paternal grandmother, Tammy. Greg was subsequently moved to a kinship placement with his paternal great uncle, Danny, and his wife, Tiffany.
At a hearing on 11 September 2013, respondent-mother signed a written stipulation to facts supporting the children's adjudication as dependent juveniles. Inter alia , she stipulated that her "substance abuse was so significant" and her "living conditions were so unsafe and unsanitary and in need of immediate remediation [as] to make the juveniles in need of assistance or placement." The trial court adjudicated the children dependent by order entered 22 January 2014. It awarded respondent-mother two hours per week of supervised visitation and ordered that the children remain in their kinship placements.
The trial court established an initial permanent plan of reunification for the children. After a hearing on 21 May 2014, however, the court ceased reunification efforts and changed the permanent plan to guardianship or custody with a court-approved caretaker. In a subsequent permanency planning order entered 14 May 2015, the court granted legal guardianship of the children to their current caretakers[2] (hereafter "petitioners") and waived further review hearings.
Respondent-mother appealed the guardianship order. While her appeal was pending, the trial court terminated respondent-mother's visitation with the children by order entered 24 September 2015. On 15 February 2016, respondent-mother filed a "Motion for Review of Placement of the Children; and for Contempt" asking the court to return the children to her custody and to hold petitioners and Brian and Hillary's therapists in contempt. In an opinion filed 5 April 2016, this Court affirmed the guardianship order. In re G.J.J., B.J., H.R.J. , 246 N.C. App. 515, 785 S.E.2d 187, 2016 WL 1359065 (2016) (unpublished). Citing our decision, DSS filed motions for review and for additional permanency planning on 13 April 2016.
After a hearing on 18 May 2016, the trial court denied respondent-mother's motion for custody and contempt, granted custody of the children to petitioners, terminated the jurisdiction of the juvenile court, and converted the cases to civil custody proceedings in file numbers 17 CVD 117-18. See N.C. Gen. Stat. § 7B-911 (2017). Respondent-mother was granted three hours per month of supervised visitation with the children, contingent on her submission of two negative drug screens to petitioners' counsel within thirty days of the requested visitation.
Petitioners filed petitions to terminate respondent-mother's parental rights on 16 September 2016. After a hearing conducted on 6 December 2017, 9 January 2018, and 27 March 2018, the trial court ruled that petitioners had established grounds for termination under N.C. Gen. Stat. § 7B-1111(a) (2017) and that terminating respondent-mother's parental rights was in the children's best interests. See N.C. Gen. Stat. § 7B-1110(a) (2017). The order terminating respondent-mother's parental rights was filed 30 May 2018. Respondent-mother filed timely notice of appeal from the termination order.
II. Discussion
Respondent-mother now claims the trial court erred in adjudicating the existence of grounds to terminate her parental rights. We disagree.
We review an adjudication under N.C. Gen. Stat. § 7B-1111(a) to determine (1) whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and (2) whether its findings in turn support its conclusions of law. In re Shepard , 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom. In re D.S. , 358 N.C. 543, 599 S.E.2d 42 (2004). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms , 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Unchallenged findings of fact are presumed to be supported by the evidence and are binding on appeal. In re H.S.F. , 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007). "Further, where the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.' " In re P.L.P. , 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) (quoting In re Clark , 159 N.C. App. 75, 78 n.3, 582 S.E.2d 657, 659 n. 3 (2003) ), aff'd per curiam , 360 N.C. 360, 625 S.E.2d 779 (2006).
As one of its grounds for terminating respondent-mother's parental rights, the trial court concluded that she
willfully left [her] minor children in placement with their respective Guardians/Petitioners since July 2013, through the date of the completion of this hearing, for well in excess of twelve (12) months without showing to the satisfaction of the Court that reasonable progress had been made to correct the conditions which led to the removal of the minor children, pursuant to North Carolina General Statutes § 7B-1111(a)(2).
N.C. Gen. Stat. § 7B-1111(a)(2) authorizes termination if a parent (1) has willfully left the child in an out-of-home placement for more than twelve months at the time the petition is filed and (2) at the time of the termination hearing, has failed to make reasonable progress under the circumstances to correct the conditions that led to the child's removal. See In re O.C. & O.B. , 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005) ; In re B.S.D.S ., 163 N.C. App. 540, 545, 594 S.E.2d 89, 92-93 (2004).
For purposes of N.C. Gen. Stat. § 7B-1111(a)(2), "[a] finding of willfulness does not require a showing of fault by the parent." In re Oghenekevebe , 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). We have held that "a respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness 'regardless of her good intentions,' " and will support a finding of lack of progress sufficient to warrant termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). In re B.S.D.S ., 163 N.C. App. at 546, 594 S.E.2d at 93 (quoting In re Bishop , 92 N.C. App. 662, 669, 375 S.E.2d 676, 681 (1989) ). Moreover, "[t]his Court has held that '[e]xtremely limited progress is not reasonable progress.' " Id. at 545, 594 S.E.2d at 93 (quoting In re Nolen , 117 N.C. App. 693, 700, 453 S.E.2d 220, 224-25 (1995) ).
The trial court found that the children were removed from the home on 12 July 2013 and that respondent-mother stipulated to their status as dependent juveniles based on the conditions in the home and her own "significant" substance abuse issues. The court made the following additional findings pertinent to its adjudication under N.C. Gen. Stat. § 7B-1111(a)(2) :
19. ... In the November 26, 2014 [permanency planning] hearing, ... the Respondent-Mother indicated that she continued to use marijuana regularly as a coping mechanism to deal with the stress in her life. She indicated that she relied on marijuana less than she used to do so. However, she gave no indication that she desired or intended to stop using the drug. Substance abuse poses a threat to the supervision of the minor children. The substance use has negatively affected the Respondent-Mother's ability to meet the basic needs of shelter, as evidenced by the condition of the home at the time of removal. Her pervasive and continued use of marijuana, despite access to every available treatment resource, continued to pose an impediment to the care of the minor children. Respondent-Mother obtained a Comprehensive Clinical Assessment through Port on August 13, 2013.
20. ... [B]ased on the Clinical Assessment, the Respondent-Mother had a diagnosis of Cannabis Dependence. ... Recommended treatment for Respondent-Mother was to participate in therapy, medication management, and substance abuse treatment. ... Respondent-Mother would not attend weekly [group therapy] and missed several weeks between groups. During her participation in the groups, Respondent-Mother admitted to continued use of marijuana. ...
....
... There is no indication of any recent treatment compliance or follow-up in the community since December 13, 2013.
21. Respondent-Mother was referred to [RHA] for a Comprehensive Clinical Assessment. ... [She] did go to RHA on November 5, 2013.... Russell Snipes diagnosed Respondent-Mother with Cannabis Abuse. According to the assessment performed, Respondent-Mother's needs are to gain insight into her pattern of domestic violence, continue substance abuse groups with Port, and DV Support Group.
....
38. During the [permanency planning] hearing on May 18, 2016, the Respondent-Mother admitted to the Court that she had not had visitations with her minor children since 2015 and further, that she continued to use marijuana on a regular basis.
....
42. The Petitioners filed these Petitions on September 16, 2016. From the time of the filing of the Petitions until the ultimate conclusion of the Termination of Parental Rights hearing on March 26, 2018, the Respondent-Mother has made no attempt to seek visitation with any of her minor children ....
43. Respondent-Mother freely admitted during her testimony that she continues to smoke marijuana, albeit that she had several short periods of time when she had temporarily stopped. Further, she admitted she never submitted any clean drug screens to counsel for the Petitioners as ordered to attempt to set out visitation with her minor children. She testified that she last used marijuana approximately a month ago. Respondent-Mother acknowledged to the Court that she desired to seek therapy for her drug use and other issues presently.
44. Respondent-Mother admitted to not having seen or been in the presence of her three minor children since early 2015....
45. Respondent-Mother's choice not to see, visit, or attempt to visit with her minor children, and her failure to attempt to initiate communication or contact with her minor children were voluntary choices made of her own volition.
46. During the pendency of this action, Respondent-Mother has resided with her mother in a relatively new home. She has also given birth to another child, for whom she provides care. The living conditions in her home have improved from those which existed at the time of removal of the minor children herein. Also, Respondent-Mother obtained a GED, and completed one year of college.
....
53. When interviewed by the court appointed Guardian Ad Litem [Ms.] Shope, Respondent-Mother stated that she had not seen the minor children since 2015 because she did not want to. As to her marijuana use, she told Ms. Shope she did not see a problem with smoking a little pot and further that she did not see a problem with smoking a joint once her children had gone to sleep. ...
54. Respondent-Mother has voluntarily permitted her minor children to remain continuously in the custody of others, in their respective homes.
....
58. ... Respondent-Mother has consistently failed to take responsibility for her actions and blames others for her not having her minor children.
....
60. Respondent-Mother has surrendered all responsibility for the raising of her minor children to the Guardians/Petitioners. She has willfully refused to perform her obligations as a parent to her three minor children.
....
113. [Although] the Respondent-Mother's living conditions have improved from those at the time of the removal of her minor children, her admitted continuing use of marijuana and her failure to take responsibility for her situation and her minor children make her house and living situation unsuitable for [the children].
As respondent-mother does not contest these findings, they are binding on appeal. In re H.S.F. , 182 N.C. App. at 742, 645 S.E.2d at 384.
We hold the evidence and the trial court's findings of fact support its conclusion under N.C. Gen. Stat. § 7B-1111(a)(2) that respondent-mother "willfully left [her] minor children in ... a placement outside of the home for more than 12 months without showing ... reasonable progress ... to correct those conditions that led to the removal of the juveniles." At the time the petitions were filed, the children had been in out-of-home placements for thirty-eight consecutive months. When the termination hearing commenced in December 2017, respondent-mother had squandered more than four years and four months without meaningfully addressing her substance abuse issues. Asked about her current marijuana usage at the 27 March 2018 hearing date, she testified as follows:
A. ... I've been on and off of it for the last five years. But I really decided that I wanted to quit it probably about six month ago.
Q. All right, and uhm, what did you do about it?
A. ... I started seeing my doctor and she referred me to a therapist and from there I started to see that therapist.
....
Q. All right, and how long a period uhm, did you go most recently without using marijuana?
A. Probably about two to two and a half months.
Q. Okay. And any particular reason why you started using it again?
A. It, I'm just kind of struggling with it right now. You know, when things get a little tough, it's just, I don't, smoke cigarettes or drink or anything of that nature so it's really the only thing that I fall back on which isn't an excuse but I'm just having a little bit of a struggle with it right now which is why I'm going to look into therapy once again.
Though claiming she last smoked marijuana "[p]robably about two weeks ago, two and a half weeks ago[,]" respondent-mother admitted she would test positive for marijuana if tested that day.
We are not persuaded by respondent-mother's assertion that she had made "reasonable progress" at the time of the termination hearing. While respondent-mother contends the language of N.C. Gen. Stat. § 7B-1111(a)(2) does not require the complete correction of the conditions that led to the children's removal, we must assess the reasonableness of her progress in light of the length of time she was afforded to make the necessary corrections. See In re Nolen , 117 N.C. App. at 699, 453 S.E.2d at 224 (1995) (emphasizing that "respondent has had more than three and one-half times the statutory period of twelve months in which to take steps to improve her situation, yet she has failed to do so").
It is true, as the trial court found, that respondent-mother's living conditions had improved since July 2013. However, her own testimony showed the improvement was attributable to her mother Diane's decision to build a new house on her property. Respondent-mother continued to live with her mother and had made no apparent effort to obtain independent housing.
We find respondent-mother's ongoing marijuana use dispositive in demonstrating her willful failure to make "reasonable progress" under N.C. Gen. Stat. § 7B-1111(a)(2). See In re S.N. , 180 N.C. App. 169, 178, 636 S.E.2d 316, 321 (2006) (upholding termination of father's rights under N.C. Gen. Stat. § 7B-1111(a)(2), despite his progress on his case plan, "because the father is still residing with the mother, and the mother's substance abuse is still untreated"). The record evidence and the trial court's findings show respondent-mother had neither ceased smoking marijuana nor made any sustained effort to obtain treatment therefor over a period of more than four years. See In re Wilkerson , 57 N.C. App. 63, 68, 291 S.E.2d 182, 185 (1982). She also chose to forego visitation with her children rather than submit two clean drug screens. Even at the time of the hearing, respondent-mother gave no indication that she viewed her continued use of marijuana as an impediment to her parenting. Finally, we find respondent-mother's lack of effort to visit or even communicate with her children since 2015 to be additional evidence of the willfulness of her actions.
Having upheld the trial court's adjudication under N.C. Gen. Stat. § 7B-1111(a)(2), we need not review the remaining grounds for termination found by the court. See In re P.L.P. , 173 N.C. App. at 8, 618 S.E.2d at 246. Because respondent-mother does not separately contest the court's assessment of the children's best interests under N.C. Gen. Stat. § 7B-1110(a), we affirm the order terminating her parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and DIETZ concur.

We use these pseudonyms to protect the identities of the juveniles.

Guardianship of Hillary and Brian was awarded to Tammy and her fiancé, Curt.