IN THE SUPREME COURT OF NORTH CAROLINA

No. 227A19

Filed 3 April 2020

IN THE MATTER OF: N.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 13 March 2019 by Judge Christopher B. McLendon, in District Court, Pitt County. This matter was calendared in the Supreme Court on 25 March 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*The Graham.Nuckols.Conner.Law Firm, PLLC, by Timothy E. Heinle, for petitioner-appellee Pitt County Department of Social Services.*

*Parker Poe Adams & Bernstein LLP, by Thomas N. Griffin III, for respondent-appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick Lenoir-Peek, for respondent-appellant father.*

MORGAN, Justice.

Respondent-father appeals from the district court's order terminating his parental rights to N.P. (Nick).[1] After careful consideration of respondent's challenges

---

[1] The minor child N.P. will be referenced throughout this opinion as "Nick," which is a pseudonym used to protect the identity of the child and to facilitate the ease of reading the opinion.

to the district court's conclusion that grounds existed to terminate his parental rights, we affirm.

On 19 September 2016, the Pitt County Department of Social Services ("DSS") obtained non-secure custody of Nick and filed a petition alleging that he was a neglected and dependent juvenile. In the petition, DSS alleged that Nick tested positive for cocaine at birth and that his mother failed to bond with him. *In re N.J.P.*, No. COA17-532, 2017 WL 5147343 *1 (N.C. Ct. App. 2017) (unpublished). DSS further alleged that respondent "had a 'co-dependent relationship' with [the mother] and had 'served time in prison for Statutory Rape/Sex Offense and Sexual Exploitation of a Minor.' " *Id.* On 23 February 2017, the district court adjudicated Nick to be a neglected and dependent juvenile. *Id.* The Court of Appeals affirmed the adjudications of neglect and dependency, but reversed the disposition in part. *Id. at* *8–9.

On 27 November 2018, DSS filed a petition to terminate the parental rights of both respondent and Nick's mother. DSS alleged grounds to terminate respondent's parental rights to Nick based on neglect, willfully leaving Nick in foster care for more than 12 months without making reasonable progress to correct the conditions that led to Nick's removal, willfully failing to pay a reasonable portion of the cost of care for Nick during his placement in DSS custody, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). On 13 March 2019, the district court entered an order concluding that grounds existed to terminate respondent's parental rights based on

all of the grounds alleged in the petition. On the same date, the district court entered a separate order in which it concluded that termination of respondent's parental rights was in Nick's best interests.[2] Respondent appeals.

Before this Court, respondent argues that the district court erred by concluding that grounds existed to terminate his parental rights. We disagree.

A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(e), (f) (2019). We review a district court's adjudication "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). If the petitioner meets its burden during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

---

[2] The district court order also terminated the parental rights of Nick's mother, but she did not appeal and is not a party to the proceedings before this Court.

N.C.G.S. § 7B-1111(a)(1) (2019) provides for termination of parental rights based upon a finding that "[t]he parent has . . . neglected the juvenile" within the meaning of N.C.G.S. § 7B-101. A neglected juvenile, in turn, is statutorily defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C.G.S. § 7B-101(15) (2019).

Generally, when termination of parental rights is based on neglect, "if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)). "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re* Z.V.A., 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citing *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)).

Here, in the order terminating respondent's parental rights, the district court found as fact that Nick was adjudicated neglected on 5 January 2017. The district court then made more than ninety findings of fact relevant to its adjudication of grounds to terminate respondent's parental rights on grounds of neglect pursuant to N.C.G.S. § 7B-1111(a)(1). For example, the district court found that, at the time of the adjudication, respondent: (1) had never acknowledged any responsibility for his

May 2001 convictions on fourteen counts of sex offenses against a child and had not received sex-offender-specific treatment following those convictions; (2) did not timely complete a court-ordered Sex Offender Specific Evaluation, and when the SOSE was completed a year after Nick's initial adjudication as a neglected juvenile, did not complete the recommended therapy and training; (3) was evaluated in the SOSE as exhibiting paranoia and actively exhibited paranoia and lack of commitment in his therapy sessions with two counselors, leading to an unscheduled discontinuation of both; (4) accused Sheriff Paula Dance of sexually abusing and kidnapping his other children, accused former Chief District Court Judge Gwen Hilburn of being mentally ill, and claimed "all parties involved in this proceeding have falsified documents"; (5) lacked stable housing as required by the district court in that one of the two residential options that respondent proposed would cause Nick and respondent to live with a registered sex offender and the second option would involve a prospective roommate for whom respondent was not able to provide any background information; (6) planned for said prospective roommate to be a caretaker for Nick and did not express an understanding of the "safety risk associated with inviting strangers into his home as potential babysitters," later "filed for a civil no-contact order against the roommate after an argument," and was eventually evicted from the residence; and (7) had repeatedly complained to DSS that Nick was suffering from physical and mental ailments from which Nick did not appear to be suffering and had contacted law

enforcement during a supervised visit to report that DSS social workers were threatening respondent's life and Nick's life. The district court also found that:

> 69. The Respondent Father's history of instability, lack of being forthcoming about housing, poor housing and roommate decisions, and the fact that he waited until so long into the case and so soon to this TPR causes the [c]ourt not to find that he has stable housing now.

> 70. The Respondent Father has not had and does not now have stable housing. The Respondent Father's frequent relocating, his history of dishonesty and vague responses to questions about his housing, and his refusal or inability to properly vet roommates, contribute to this instability.

> . . .

> 91. The Respondent Father['s] inability to consistently follow court orders or work to resolve the issues which brought his child into DSS custody, as well as his history of poor decision-making, demonstrates that he is unable to maintain the juvenile's health and safety should the juvenile be placed in his care.

> 92. To place the juvenile with the Respondent Father would place the juvenile in an injurious environment as there have been no changes to the Respondent Father's mental health issues.

Overall, respondent does not make specific challenges to the district court's findings of fact, instead lodging a broadside exception that the evidentiary findings relating to the ground of neglect are not supported by the record. Such broadside exceptions, however, are ineffectual, and findings of fact not specifically challenged by a respondent are presumed to be supported by competent evidence and binding on appeal. *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) ("Findings of fact

not challenged by respondent are deemed supported by competent evidence and are binding on appeal." (citations omitted)). Moreover, we review only those findings necessary to support the district court's conclusion that grounds existed to terminate respondent's parental rights for neglect. *Id.* at 407, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133).

Of the findings of fact generally and noteworthily referenced above, the only findings specifically challenged by respondent which are relevant to the ground of neglect are Findings of Fact 69 and 70, which relate to respondent's history of unstable housing. Respondent contends that these findings of fact were based on events occurring in the past and do not reflect his status as of the date of the termination hearing. We disagree, noting that respondent does not challenge any of the findings which describe his history of unstable housing and poor decisions regarding housing and roommates. The district court has the responsibility of making all reasonable inferences from the evidence presented. *See In re D.L.W.*, 368 N.C. at 788 S.E.2d at167–68 (stating that it is the district court judge's duty to consider all of the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom). The district court could reasonably infer from the evidence that respondent could not maintain safe housing for any appreciable period of time and that he lacked the ability to do so in the future. *See, e.g., In re Wilkerson*, 57 N.C. App. 63, 68, 291 S.E.2d 182, 185 (1982) (rejecting respondents' argument that they had corrected the conditions which led to the

removal for neglect, indicating that at the time of the termination hearing they were no longer living in a rat-infested trailer but in a clean five-room apartment, but ignoring the preponderance of the evidence that they had lived in filthy and unsanitary conditions until shortly before the termination hearing).

Respondent generally contends that the trial court erred by finding and concluding that he neglected Nick and that such neglect was likely to reoccur. Respondent also asserts that he had alleviated the conditions of neglect that led to Nick's removal. He further claims that the district court failed to make a specific finding regarding the probability of repetition of neglect. We are not persuaded.

The district court's undisputed findings of fact demonstrate that respondent was convicted for sexually abusing children and denied responsibility for those convictions; had persistent and serious mental health issues that affected his ability to parent Nick; and suffers from serious paranoia, impulsivity, and erratic behavior. The district court further determined that these issues impeded and impacted respondent's ability to parent Nick, and that placing Nick with respondent would put Nick in an injurious environment. Although respondent attempts to portray his behavior as being protective of Nick, the district court, which had repeated opportunities to observe respondent, rejected that depiction, and it is not the role of this Court to substitute its judgment for that of the trier of fact. *See, e.g., Scott v. Scott,* 157 N.C. App. 382, 388, 579 S.E.2d 431, 435 (2003) (stating that when the trial court sits as fact-finder, it is the sole judge of the credibility and weight to be given to

the evidence, and it is not the role of the appellate court to substitute its judgment for that of the trial court). Additionally, it is clear that respondent lacked stable housing until shortly before the termination hearing. Furthermore, despite respondent's claims to the contrary, the district court expressly made a specific ultimate finding that "there is a high probability that a repetition of neglect would occur in the future if [Nick] were to be placed with the Respondent Father." The district court's findings on this issue are supported by clear, cogent, and convincing evidence; as a result, we hold that the district court did not err by determining that grounds existed under N.C.G.S. § 7B-1111(a)(1) to terminate respondent's parental rights.

The district court's conclusion that a ground for termination existed pursuant to N.C.G.S. § 7B-1111(a)(1) is sufficient in and of itself to support termination of respondent's parental rights. *In re T.N.H.*, 372 N.C. at 413, 831 S.E.2d at 62. Furthermore, respondent does not challenge the trial court's conclusion that termination of his parental rights was in the child Nick's best interests. *See* N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the district court's order terminating respondent's parental rights.

AFFIRMED.