IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-35

No. 268A21

Filed 18 March 2022

IN THE MATTER OF: D.I.L.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 1 June 2021 by Judge David V. Byrd in District Court, Yadkin County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*J. Clark Fischer for petitioner-appellees.*

*No brief for Guardian ad Litem.*

*Peter Wood for respondent-appellant father.*

BARRINGER, Justice.

Respondent appeals from the order terminating his parental rights to his minor child D.I.L. (Daniel).[1] The trial court concluded that both respondent and Daniel's biological mother (mother)[2] had neglected Daniel and that there was a

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

[2] Daniel's biological mother is not a party to this appeal.

substantial likelihood of repetition of neglect of Daniel by respondent and the mother. Hence, the trial court found that the ground of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) existed to terminate respondent's parental rights. The trial court further concluded that it was in the best interests of Daniel that respondent's and the mother's parental rights be terminated and thus terminated their parental rights.

On appeal, respondent challenges the trial court's determination that there was a substantial likelihood of repetition of neglect if Daniel was returned to respondent's care. Respondent contends this determination was erroneous because petitioners had custody pursuant to a civil custody order, rendering respondent unable to obtain custody without a substantial change in his ability to care for Daniel and his parenting skills. Since we conclude that this argument has no merit, we affirm the trial court's order terminating the parental rights of respondent to Daniel.

## I. Background

When Daniel resided with his mother and respondent, Daniel witnessed them sticking themselves with needles and selling drugs. They also instructed Daniel to obtain their "happy medicine," which involved needles. Respondent overdosed once, necessitating emergency medical services, and had an ongoing drinking problem. As respondent and the mother passed out frequently from their substance use, Daniel's older half-brother had to feed Daniel. The home was dirty and infested with roaches.

Eventually, the Wilkes County Department of Social Services (DSS) became involved with the family because of illegal drug activity in respondent and the mother's home. Respondent and the mother approached petitioners about taking care of Daniel's older half-brother, and petitioners came to learn of Daniel's situation through DSS.

Thereafter, on 24 February 2016, petitioners took Daniel and Daniel's half-brother into their care. Daniel arrived with educational deficits for his age, food insecurity, clothing infested with roaches and contaminated by intravenous needles, unprescribed medicine, and fears of corporal punishment if he was caught lying.

DSS subsequently filed a petition alleging that Daniel was a neglected juvenile. The trial court adjudicated Daniel a neglected juvenile by order entered on 20 July 2016. Thereafter, on 7 September 2016, in a civil custody proceeding, the trial court granted petitioners primary legal and physical custody of Daniel. The order provided respondent with monthly supervised visitation.

Respondent initially utilized some of his visitation rights but did not interact with Daniel very much during the visits. Respondent visited with Daniel approximately eight times between 2016 and 2017. During this time period, respondent provided Daniel a bike, some clothes, and some toys. However, at a visit in 2016, respondent arrived high and could barely walk or talk, and at a visit in 2017, respondent smelled of alcohol and drank from a container in a brown bag. The visit

in August 2017 was the last time respondent visited with Daniel or petitioners. Respondent did not contact petitioners to arrange subsequent visits and ceased calling petitioners. Respondent also had not written or sent any cards to Daniel since 2015.

¶ 8        Respondent filed a motion to modify custody on 17 September 2018. On 2 October 2018, petitioners filed a petition to terminate respondent's and the mother's parental rights, alleging neglect and willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(1) and (a)(7). Petitioners subsequently amended the petition on 8 April 2019 to attach the custody orders referenced in the petition.

¶ 9        A termination-of-parental-rights hearing occurred over the course of three days. At the time, respondent was on probation. Respondent previously had been convicted of driving while impaired and one or more drug offenses, including maintaining a dwelling for purposes of controlled substances. Respondent was employed, had health insurance, resided in a two-bedroom mobile home, and paid child support for one of his children. However, he had not paid child support for Daniel (or any of his other children) or added Daniel to his health insurance plan despite its availability. Respondent acknowledged that he chose not to pay child support for Daniel's care.

¶ 10        The trial court found that a ground existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and that termination was in Daniel's best

interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed.

## II. Substantial Likelihood of Repetition of Neglect

On appeal, respondent argues that the trial court committed prejudicial error for one reason: the trial court found a substantial likelihood of repetition of neglect when there was no chance for respondent to obtain custody of Daniel unless respondent showed a substantial change in his parenting skills and ability to care for Daniel. Respondent argues that this showing would be required for him to obtain custody because petitioners already had custody pursuant to a civil custody order.

Petitioners contend that the existence of a civil custody order does not bar a determination of a substantial likelihood of repetition of neglect. Petitioners argue that this Court's decision in *In re B.T.J.*, 377 N.C. 18, 2021-NCSC-23, directs the trial court to assess the fitness of the parent to care for the child *at the time of the termination-of-parental-rights proceeding* when determining a probability of repetition of neglect. Thus, according to petitioners, the custody order is irrelevant. Further, petitioners raise that respondent's contention ignores the definitions of neglect and neglected juvenile under the applicable statutes, N.C.G.S. § 7B-1111(a)(1) and N.C.G.S. § 7B-101(15).

We agree that respondent's argument is contrary to this Court's prior decisions. For several decades, this Court has recognized that in addition to evidence

of prior neglect by the parents prior to losing custody of the juvenile, including an

adjudication of neglect,

> [t]he trial court must also consider any evidence of changed
> conditions in light of the evidence of prior neglect and the
> probability of a repetition of neglect. The determinative
> factors must be the best interests of the child and the
> fitness of the parent to care for the child *at the time of the
> termination proceeding*.

*In re Ballard*, 311 N.C. 708, 715 (1984) (cleaned up); *see also In re B.T.J.*, ¶ 13.

¶ 14        Further, the applicable statutes do not deem the fitness necessary for a parent

to regain custody of a child relevant to a determination of neglect under N.C.G.S.

§ 7B-1111(a)(1). Pursuant to N.C.G.S. § 7B-1111(a)(1), a trial court "may terminate

. . . parental rights upon a finding [that] . . . [t]he parent *has* . . . neglected the

juvenile." N.C.G.S. § 7B-1111(a) (2021) (emphasis added). And subsection 7B-101(15)

of the General Statutes of North Carolina defines neglected juvenile to include "[a]ny

juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker

*does* not provide proper care, supervision, or discipline." N.C.G.S. § 7B-101(15) (2019)

(emphasis added); *see also* N.C.G.S. § 7B-101(15) (2021) (defining neglected juvenile

as "[a]ny juvenile less than 18 years of age . . . whose parent, guardian, custodian, or

caretaker *does* any of the following: . . . [d]oes not provide proper care, supervision, or

discipline" (emphasis added)). Notably, the applicable statutes use the present or

present perfect tense—not the future—and make no mention of the fitness necessary

for a parent to regain custody of his or her child.

¶ 15        Thus, we conclude that the trial court did not err.

### III.    Conclusion

¶ 16        Having addressed the one issue respondent identified on appeal[3]—whether "[t]he trial court committed prejudicial error by finding a probability of future neglect when there was no risk of future neglect because Daniel could not be returned to [respondent] under the civil custody order unless a court found there was no risk to the child"—and having found no merit to the argument, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.

---

[3] Respondent stated in his brief that he "dispute[d] conclusions of law six and seven." However, respondent offered no argument or reason to support this statement other than the one issue that he identified on appeal, which we hold has no merit. Thus, we have addressed the issue presented to the Court. All other issues are deemed abandoned. *See* N.C. R. App. P. 28(a), (b)(6).