IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-5

No. 214A20

Filed 5 February 2021

IN THE MATTER OF: S.R.F.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 12 February 2020 by Chief Judge Thomas M. Brittain in District Court, Transylvania County. This matter was calendared in the Supreme Court on 6 January 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mary Ann J. Hollocker for petitioner-appellee Transylvania County Department of Social Services.*

*Susan H. Boyles for appellee Guardian ad Litem.*

*Robert W. Ewing for respondent-appellant mother.*

MORGAN, Justice.

¶ 1     Respondent-mother appeals from the trial court's order terminating her parental rights to "Sarah,"[1] a minor child born in September 2014. Although the trial court also terminated the parental rights of Sarah's father, he is not a party to this appeal. Because we conclude that the trial court properly adjudicated the existence

---

[1] We use this pseudonym to protect the juvenile's privacy and for ease of reading.

of grounds to terminate respondent-mother's parental rights based on her neglect of Sarah, we affirm.

*Factual Background and Procedural History*

¶ 2 On 28 March 2018, Transylvania County Department of Social Services (DSS) obtained nonsecure custody of Sarah and filed a juvenile petition alleging that she was neglected and dependent. The trial court held an adjudicatory hearing on 30 May 2018 at which the parties stipulated to the following facts:

> 12. On or about October 17, 2017, [DSS] received a Child Protective Services report that [Sarah] had been exposed to a physical altercation between [respondent-mother] and a man named Casey.
>
> 13. [Sarah] was in the presence of the domestic violence incident when Casey hit, smacked, and choked [respondent-mother].
>
> 14. On or about October 18, 2017, [DSS] received a Child Protective Services report alleging [respondent-mother] was using meth and leaving [Sarah] with who[m]ever and drugs are being sold out of the home where the child lives.
>
> 15. . . . Law enforcement went to the home and found methamphetamine. [Respondent-mother] was charged with Felony Possession [of] Methamphetamine. Charges are currently pending. [Sarah] was at the home during the raid.
>
> 16. On or about October 19, 2017, [respondent-mother] made [a] plan for [Sarah] to reside with her grandmother . . . and then later changed the plan to her father, David . . . . David and [his wife] are unable to continue to provide care for [Sarah] at this time.

17. On or about October 21, 2017, [a DSS] Social Worker . . . met with [respondent-mother] in Transylvania County jail and [respondent-mother] agreed to [a] safety assessment. . . .

. . . .

22. [Respondent-mother] did not contact the social worker upon release from jail. [She] has not completed a substance abuse assessment. [She] has not complied with drug screen requests from the Department.

. . . .

24. On or about March 5, 2018, [respondent-mother] was charged with Felony Breaking and/or Entering and Felony Larceny after Breaking/Entering for stealing items from her grandmother's home. Charges are currently pending.

25. [Respondent-mother] admitted to the social worker that drugs were sold out of the home where the juvenile was residing.

26. [Respondent-mother] admitted to the social worker that she has an addiction problem and was using methamphetamine.

. . . .

29. . . . [Respondent-mother] was incarcerated at the time of the petition.

30. [Sarah] has been exposed to an injurious environment while in her mother's care. The juvenile has been exposed to domestic violence and substance abuse.

> 31. [Respondent-mother's] substance abuse has impeded her ability to provide appropriate care and supervision of the juvenile.

Based on these stipulated facts, the trial court entered an order on 12 June 2018 adjudicating Sarah to be a neglected and dependent juvenile.

¶ 3 The trial court held a dispositional hearing on 13 June 2018 and subsequently entered a "Disposition Order" on 2 August 2018. As a result of the hearing and the order, the trial court granted custody and placement authority over Sarah to DSS and specifically sanctioned Sarah's transfer from kinship care into a foster placement recommended by DSS. The trial court provided one hour of supervised visitation per week with Sarah to respondent-mother and ordered respondent-mother to contact DSS in order to establish a case plan and to "follow any and all parts" thereof. Respondent-mother signed her DSS case plan on 14 June 2018.

¶ 4 After a permanency planning hearing on 14 November 2018, the trial court established a primary permanent plan for Sarah of reunification, with a secondary plan of adoption and termination of parental rights. However, the trial court discontinued respondent-mother's visitation with Sarah due to respondent-mother's repeated failure to attend scheduled visits and the resulting distress caused to Sarah. The trial court offered the prospect of future visitation if respondent-mother would "reengage."

¶ 5 Following a hearing on 15 May 2019, the trial court changed Sarah's primary permanent plan to termination of parental rights and adoption. The trial court found that respondent-mother was incarcerated and had not "made any attempts to work on her [case] plan" since the previous hearing.

¶ 6 DSS filed a motion to terminate the parental rights of both respondents to Sarah on 15 July 2019. After a series of continuances, the trial court held a hearing on the motion to terminate parental rights on 15 January 2020 and entered an order terminating respondents' parental rights on 12 February 2020.

¶ 7 The trial court adjudicated the existence of two statutory grounds for terminating respondent-mother's parental rights: (1) respondent-mother's neglect of Sarah under N.C.G.S. § 7B-1111(a)(1) (2019), and (2) respondent-mother's willful failure to make reasonable progress to correct the conditions leading to Sarah's removal from the home in March 2018 under N.C.G.S. § 7B-1111(a)(2) (2019). The trial court then considered the dispositional factors in N.C.G.S. § 7B-1110(a) (2019) and concluded that it was in Sarah's best interests to terminate respondent-mother's parental rights. Respondent-mother gave timely notice of appeal from the termination of parental rights order.

¶ 8        In her appeal to this Court, respondent-mother challenges both of the grounds for termination of her parental rights which were adjudicated by the trial court.[2] She contends the court's adjudications are unsupported by its findings of fact and based on findings not supported by the evidence. Respondent-mother does not separately contest the trial court's determination of Sarah's best interests at the dispositional stage of the proceeding under N.C.G.S. § 7B-1110(a). We thus limit our review to the court's adjudicatory findings and conclusions.

*Adjudication*

¶ 9        Under this Court's well-established standard of review,

> [w]e review a district court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings needed to sustain the trial court's adjudication.
>
> The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo. However, an adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. Therefore, if this Court

---

[2] In an "abundance of caution," respondent-mother also challenges the trial court's adjudications of dependency under N.C.G.S. § 7B-1111(a)(6) (2019) and willful abandonment under N.C.G.S. § 7B-1111(a)(7) (2019), insofar as the trial court relied on these additional grounds. Although the trial court made findings that include language found in N.C.G.S. § 7B-1111(a)(6) and (7), the termination of parental rights order makes no reference to either of these provisions. The trial court relied only upon N.C.G.S. § 7B-1111(a)(1) and (2) as its grounds for terminating respondent-mother's parental rights.

upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds.

*In re J.S.*, 374 N.C. 811, 814–15, 845 S.E.2d 66, 70–71 (2020) (extraneity omitted).

¶ 10 In the instant case, the trial court adjudicated grounds to terminate respondent-mother's parental rights for neglecting Sarah under N.C.G.S. § 7B-1111(a)(1). A juvenile is deemed "neglected" if the child is denied "proper care, supervision, or discipline" by the child's parent or caretaker, if the juvenile "lives in an environment injurious to the juvenile's welfare[,]" or if the juvenile "has been abandoned[.]" N.C.G.S. § 7B-101(15) (2019).

¶ 11 When termination of parental rights is based on neglect, "if the child has been separated from the parent for a long period of time, there must be a showing of . . . a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984))[3]. "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of

---

[3] As we have more recently determined in our opinion rendered in *In re R.L.D.*, No. 122A20, 2020 N.C. LEXIS 1043, at *5 n.3 (N.C. Dec. 11, 2020), a showing of past neglect and a probability of future neglect is not necessary to support a determination that a parent's parental rights to a juvenile are subject to termination on the basis of neglect pursuant to N.C.G.S. 7B-1111(a)(1) in light of the fact that such a determination is also permissible in the event that there is a showing of current neglect.

past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citing *Ballard*, 311 N.C. at 715, 319 S.E.2d at 232).

¶ 12 Respondent-mother challenges several of the trial court's findings of fact on the basis that they are unsupported by the evidence introduced at the termination hearing. She first claims that the evidence does not support Finding of Fact 14(6), which states that the trial court's initial Disposition Order entered on 2 August 2018 required her and respondent-father to "[o]btain a domestic violence assessment and follow any recommended treatment[.]"

¶ 13 We agree with respondent-mother that the Disposition Order did not contain an express directive to address the issue of domestic violence, even though exposure to domestic violence in respondent-mother's home was one of the reasons for Sarah's adjudication as a neglected juvenile on 13 June 2018. However, in light of the uncontested portions of Findings of Fact 16 and 17, which state that respondent-mother signed a case plan with DSS on 14 June 2018 and that her DSS case plan required her "to engage in domestic violence treatment which she has failed to do," we conclude that the trial court's erroneous finding about the terms of the Disposition Order on this subject and respondent-mother's failure to comply in this area constitute harmless error. As respondent-mother does not contest Findings of Fact 16 and 17, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Since the Disposition Order required respondent-mother to "follow

any and all parts" of her DSS case plan, the error that she identifies in Finding of Fact 14(6) is unavailing to her appeal. *See generally In re M.C.*, 374 N.C. 882, 887, 844 S.E.2d 564, 568 (2020) (concluding that "the erroneous finding is not necessary to support the trial court's legal determination that grounds existed for the termination of respondent's parental rights").

Respondent-mother next objects to those portions of Finding of Fact 17 which state that she was ordered to obtain "a comprehensive clinical assessment which she never completed" and that she failed to "engage in substance abuse treatment . . . by not having the assessment." Respondent-mother claims that there is no evidence in the record that she was required to have a "comprehensive clinical assessment" (CCA). She further contends that the record shows that she submitted to a mental health and substance abuse assessment as ordered by the trial court.

While we again agree with respondent-mother that the findings of fact that she has identified and challenged are erroneous, we also again conclude that these errors are harmless in light of the trial court's related findings and supporting evidence. While the record contains no evidence that respondent-mother was ordered to obtain a CCA,[4] the trial court did order, however, that respondent-mother was required to

---

[4] North Carolina law does not define or establish uniform protocols for a CCA. A manual published by the North Carolina Department of Health and Human Services provides the following description:

> The CCA is a face-to-face evaluation and must include the following elements:

enter into a case plan with DSS that included the following components: "obtain a

mental health and substance abuse assessment [and] follow all recommendations of

the assessment[.]" Whatever specific distinctions may exist between a CCA and a

"mental health and substance abuse assessment," they are irrelevant given

respondent-mother's lack of progress in addressing the causes of Sarah's 12 June

2018 adjudication as a neglected juvenile.

---

- A description of the presenting problems, including source of distress, precipitating events, and associated problems or symptoms;
- A chronological general health and behavioral history (including both mental health and substance abuse) of the individual's symptoms, treatment, and treatment response;
- Current medications (for both physical and psychiatric treatment);
- A review of biological, psychological, familial, social, developmental, and environmental dimensions to identify strengths, needs, and risks in each area;
- Evidence of beneficiary and legally responsible person's (if applicable) participation in the assessment;
- Analysis and interpretation of the assessment information with an appropriate case formulation;
- Diagnoses from the DSM-5 [or any subsequent editions], including mental health, substance use disorders, and/or intellectual/developmental disabilities, as well as physical health conditions and functional impairment; and
- Recommendations for additional assessments, services, support, or treatment based on the results of the CCA.

N.C. DEP'T OF HEALTH & HUM. SERVS. DIV. OF MENTAL HEALTH, DEV. DISABILITIES, AND SUBS. ABUSE SERVS., APSM45-2, RECORDS MGMT. & DOC. MANUAL FOR PROVIDERS OF PUBLICLY-FUNDED MENTAL HEALTH, INTELL. OR DEV. DISABILITIES, & SUBS. USE SERVS. & LOCAL MGMT. ENTITIES-MANAGED CARE ORGS., ch. 3-2 (Dec. 1, 2016).

¶ 16     The evidence at the termination of parental rights hearing showed that respondent-mother obtained a mental health assessment and substance abuse assessment at Meridian on 14 June 2018 but failed to comply with the recommended treatment. Respondent-mother had an updated substance abuse assessment on 11 December 2019[5] while she was living in Forsyth County following her release from prison in October 2019, but she again failed to follow the assessor's treatment recommendations. The assessor had recommended, based on respondent-mother's self-report that respondent-mother had been sober since her arrest for possession of methamphetamine and other drugs on 28 April 2019, that respondent-mother attend "a relapse prevention program at Daymark" and "twelve-step meetings and Celebrate Recovery" due to the high rate of relapse associated with methamphetamine use. However, respondent-mother declined to do so. Accordingly, although we disregard the improper finding by the trial court that respondent-mother failed to obtain a substance abuse assessment, we fully credit the trial court's proper finding that respondent-mother failed to engage in the recommended treatment as required by her case plan. *See In re S.D.*, 374 N.C. 67, 83, 839 S.E.2d 315, 328 (2020).

¶ 17     Respondent-mother also challenges the following segment of Finding of Fact 27:

---

[5] DSS Social Worker Jodi Hopkins testified that mental health and substance abuse assessments are considered valid for a period of one year.

> 27.     As of the date of this hearing, due to the respondent parents' *continued substance abuse and domestic violence* [emphasis added], failure to work on their case plan and obtain treatment, and failure to work toward reunification with the child, there is a substantial likelihood of further neglect if child was placed in the custody of said respondents.

Respondent-mother objects to the trial court's determination that she continued to engage in substance abuse and domestic violence at the time of the termination hearing. Respondent-mother specifically argues that "the finding that [she] continued to engage in substance abuse and domestic violence is a conclusion of law and should be treated as such" for purposes of appellate review. *See generally State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) ("Findings of fact which are essentially conclusions of law will be treated as such on appeal." (extraneity omitted)). She then submits that the trial court's conclusion about her continued substance abuse and domestic violence was "not supported by any findings of fact" in the order terminating respondent-mother's parental rights.

¶ 18     We hold that the trial court's determination that respondents continued to engage in substance abuse and domestic violence is properly designated as a finding of fact rather than as a conclusion of law. In the event that the trial court had used the words "substance abuse" and "domestic violence" as legal terms of art in its order to clearly articulate a legal ruling, then respondent-mother's characterization of these terms might be more persuasive. *See generally Sparks*, 362 N.C. at 185, 657 S.E.2d

at 658 ("In distinguishing between findings of fact and conclusions of law, as a general rule, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." (extraneity omitted)). However, in the context in which the trial court's observation is rendered, we construe the trial court's determination that respondent parents engaged in "continued substance abuse and domestic violence" to mean that they still acted in such a manner at the time of the termination hearing. We do recognize, however, that the trial court's ending determination in Finding of Fact 27 that this conduct of respondent parents creates "a substantial likelihood of further neglect if child was placed in the custody of said respondents" is in the nature of a conclusion of law. *See In re J.O.D.*, 374 N.C. 797, 807, 844 S.E.2d 570, 578 (2020).

Notwithstanding this Court's disagreement with respondent-mother's disputed classification of the trial court's determination, we find insufficient evidentiary support for the portion of Finding of Fact 27 that she was participating in "continued substance abuse and domestic violence" at the time of the termination of parental rights hearing on 15 January 2020. DSS presented evidence that respondent-mother had multiple drug-related arrests and periods of incarceration during the course of the underlying juvenile case. DSS Social Worker Hopkins also testified that respondent-mother was on probation and awaiting trial on felony drug charges at the time of the termination hearing. However, respondent-mother's three

most recent drug screens had been negative for the presence of controlled substances; for in Finding of Fact 17, the trial court acknowledged that respondent-mother "did submit to some [drug screens,] and the most recent ones were negative." Similarly, although DSS adduced evidence of respondent-mother's involvement in a single domestic violence incident at her boyfriend's residence in August 2018 after Sarah had entered nonsecure custody, the agency did not present evidence of any subsequent episodes of domestic violence. As a result, we disregard the portion of Finding of Fact 27 concerning "continued substance abuse and domestic violence." *See In re J.M.J.-J.*, 374 N.C. 553, 559, 843 S.E.2d 94, 101 (2020).

¶ 20        Having addressed each of respondent-mother's objections to the trial court's challenged findings of fact, we now consider her claim that the court's findings as a whole do not support its conclusion of law in support of its adjudication of neglect under N.C.G.S. § 7B-1111(a)(1), to wit:

> 4. The respondent parents have neglected the minor child [Sarah]. Due to the respondent parents' substance abuse and improper care and supervision of the child, the child was adjudicated to be a neglected and dependent juvenile by order entered in this matter following hearing on May 30, 2018. Despite the movant having referred the parents to services aimed at remedying the issues that lead [sic] to the child being placed out of the home of the respondents, including referrals to various agencies to help address substance abuse issues and improvement of parenting skills, said respondents failed to meaningfully engage in their case plan. The respondent parents' unwillingness to document an ability to provide a safe and appropriate home for the minor child, together with the

> failure to address their substance abuse issues and domestic violence issues, and failure to meaningfully engage in their case plan[,] demonstrate there is a reasonable likelihood that neglect [of] the child would reoccur in the future if the child was placed in the custody of said respondents, and said facts constitute a ground to terminate the respondent parents' parental rights to the minor child pursuant to N.C.[G.S.] § 7B-1111(a)(1).

¶ 21  While she does not deny her prior neglect of Sarah, respondent-mother contends that the trial court erred in concluding that Sarah was likely to experience further neglect if the child were returned to respondent-mother's custody. *See generally In re J.O.D.*, 374 N.C. at 807, 844 S.E.2d at 578 (explaining that the "determination that neglect is likely to reoccur if [the juvenile] was returned to [the parent's] care is more properly classified as a conclusion of law"). We must determine therefore whether the trial court's valid findings of fact demonstrate a likelihood of future neglect by respondent-mother at the time of the termination of parental rights hearing. *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167.

¶ 22  The trial court's supported findings of fact indicate that respondent-mother has a Child Protective Services history dating back to 2014 which denotes repeated reports of improper supervision and care, substance abuse, and domestic violence. The findings also detail the circumstances that led DSS to assume nonsecure custody of Sarah in March 2018 and resulted in the child's adjudication as a neglected and dependent juvenile in June 2018. Specifically, the findings describe Sarah's "expos[ure] to domestic violence and substance abuse" in respondent-mother's care,

as well as respondent-mother's incarceration on criminal charges, lack of stable employment or housing, and self-professed addiction to methamphetamine.

As summarized in Conclusion of Law 4, the trial court's findings of fact further reflect respondent-mother's failure to "meaningfully address[]" the issues of substance abuse and domestic violence which led to Sarah's status as a neglected and dependent juvenile. These findings recognize that respondent-mother obtained no domestic violence or substance abuse treatment, except for a brief period of substance abuse treatment while she was incarcerated in 2019. More generally, said findings illustrate respondent-mother's failure to "meaningfully engage" in any of the requirements of her court-ordered DSS case plan, which also included the completion of parenting classes and the attainment of stable housing and employment. The findings also catalog respondent-mother's failure to visit or contact Sarah after 21 August 2018 and respondent-mother's dereliction to provide any financial support for Sarah while the child was in DSS custody.

Other findings—specifically Finding of Fact 17—demonstrate the trial court's consideration of the evidence of changed circumstances which are favorable to respondent-mother. Finding of Fact 17 credits respondent-mother with obtaining some substance abuse treatment while in prison. The evidence at the termination

hearing showed that she received approximately four weeks of "MRT classes"[6] while incarcerated for a probation violation. However, respondent-mother did not complete the MRT program following her release from confinement on 8 October 2019 and did not obtain any additional substance abuse treatment at the time of the termination hearing. Finding of Fact 17 also favorably acknowledged respondent-mother's negative drug screens.

¶ 25   "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) (quoting *In re M.J.S.M.*, 257 N.C. App. 633, 637, 810 S.E.2d 370, 373 (2018)). Here, the trial court's findings of fact demonstrate an extended period of respondent-mother's failure to comply with the DSS case plan which she signed on 14 June 2018, with particular emphasis upon respondent-mother's failure to comply with the conditions of her case plan directly related to the issues of domestic violence and substance abuse. *See In re C.J.*, 373 N.C. 260, 263, 837 S.E.2d 859, 861 (2020); *In re M.A.W.*, 370 N.C. at 154–55, 804 S.E.2d at 517–18. The findings also emphasize respondent-mother's complete lack of involvement with Sarah since 21 August 2018. *See In re D.L.A.D.*, No. 123A20, 2020 WL 6815091, at *5 (N.C. Nov. 20, 2020) ("An

---

[6] Moral Reconation Therapy (MRT) is "a cognitive behavioral program conducted in a group setting, designed to reduce criminal thinking and reinforce positive behaviors and habits." Jamie Markham, *A Visit to the Burke CRV Center*, NORTH CAROLINA CRIMINAL LAW (May 23, 2019, 4:07 PM), https://nccriminallaw.sog.unc.edu/a-visit-to-the-burke-crv-center/.

extended period in which a parent does not attempt to visit the child could show ['a future propensity to be inattentive to the child.']"); *In re A.S.T.*, No. 18A20, 2020 WL 6815097, at *6 (N.C. Nov. 20, 2020) (relying in part on the respondent-father's failure to attempt to contact the child in affirming trial court's conclusion of a probability of future neglect). Respondent-mother's few weeks of attending a prison-based substance abuse program, followed by a brief period of apparent sobriety leading up to the termination of parental rights hearing, is insufficient to negate the trial court's determination that respondent-mother was likely to subject Sarah to further neglect if the child were returned to the custody of respondent-mother. *See In re O.W.D.A.*, No. 397A19, 2020 WL 6815126, at *6 (N.C. Nov. 20, 2020) ("[A]lthough respondent-father may have made some minimal progress during his most recent incarceration, . . . these eleventh-hour efforts did not outweigh the evidence of his persistent failures to make improvements while not incarcerated . . . ."); *In re A.S.T.*, No. 18A20, 2020 WL 6815097, at *6 (affirming adjudication under N.C.G.S. § 7B-1111(a)(1) where "[r]espondent has failed to appreciably address his substance abuse issues . . . and has only shown an extended abstinence from cocaine use while incarcerated"). Accordingly, we hold that the trial court properly concluded that grounds existed to terminate respondent-mother's parental rights to Sarah for neglect pursuant to N.C.G.S. § 7B-1111(a)(1).

Having upheld the trial court adjudication of neglect under N.C.G.S. § 7B-1111(a)(1), we need not review its additional adjudication of willful failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2). *In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71.

## *Conclusion*

Although respondent-mother has identified some harmless inaccuracies in the trial court's adjudicatory findings of fact, the trial court's remaining findings of fact support its conclusions of law that grounds exist to terminate respondent-mother's parental rights for her neglect of the juvenile Sarah under N.C.G.S. § 7B-1111(a)(1). Because respondent-mother does not separately challenge the trial court's determination that terminating respondent-mother's parental rights to Sarah is in the best interests of the juvenile, we affirm the termination of parental rights order.

AFFIRMED.