An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-480

Filed 17 June 2026

Guilford County, No. 20JT000550-400

IN THE MATTER OF:

M.H.

Appeal by respondent-mother from order entered 27 January 2025 by Judge Tabitha Holliday in Guilford County Juvenile District Court. Heard in the Court of Appeals 23 April 2026.

> *J. Thomas Diepenbrock for respondent-appellant mother.*
>
> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*
>
> *Brittany T. McKinney for the Guardian ad Litem.*

DILLON Chief Judge.

In this case, respondent-mother appeals a termination of parental rights order and requests this court to review the trial court's order, arguing the trial court erred in terminating her parental rights under N.C.G.S. § 7B-111(a)(1), (2), and (6). For

the reasoning below, we affirm the trial court's order.

I.     Background

Respondent-Mother ("Mother") is the mother of Melody.[1]  In October 2019, a report was filed with the Guilford County Department of Health and Human Services ("DHHS") alleging Melody was neglected and that Mother struggled with mental health and substance abuse.  After an initial visit with Mother and Melody, DHHS referred Mother to its clinical unit for a mental health assessment.  After the assessment, Mother was diagnosed with ADHD, Unspecified Trauma and Other Stressor Related Disorder, Other Personality Disorder with narcissistic/histrionic traits, and Opiate Use Disorder.

In December 2019, a second report was filed with DHHS, stating Melody was scared to go home due to Mother's behavior.  Following the second report, Melody was placed in the temporary care of her maternal grandfather, followed by a family friend, then followed by her paternal grandmother.[2]

In March 2020, DHHS filed a juvenile petition alleging Melody was neglected and dependent.  On 19 May 2021, after a hearing on the matter, the trial court entered an order adjudicating Melody as neglected and dependent.  Following the adjudication, Mother entered into a case plan which in part required her to: (1)

---

[1] A pseudonym.

[2] At the time of this case, Melody's father was incarcerated and later died in December 2022.

maintain safe and sustainable housing, (2) complete a parenting psychological assessment and partake in a parenting education program, (3) provide income verification, (4) partake in follow-up mental health treatment, (5) not disrupt Melody's DHHS placement home, and (6) submit to random drug screenings. During the course of this case, Mother failed to fully complete her parenting education program, failed to comply with her mental health and psychiatric treatment recommendations, tried to contact Melody on numerous occasions via fake social media accounts, was incarcerated due to threatening numerous court officers, and failed numerous drug screens.

In February 2024, DHHS filed a motion for termination of Mother's parental rights. On 27 January 2025, after a hearing on the matter, the trial court entered an order terminating Mother's parental rights. Mother appeals.

## II. Analysis

Mother argues the trial court erred in terminating her parental rights under N.C.G.S. § 7B-111(a)(1), (a)(2), and (a)(6).

Termination of parental rights involves two stages: adjudication and disposition. This Court reviews the trial court's decision at each stage according to its own standard of review. *See In re Q.P.W.*, 376 N.C. 738, 741 (2021). At the adjudication stage, "the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under Section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6 (2019).

Relevant to this case, these grounds include:

> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.
>
> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
>
> . . . .
>
> (6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C.G.S. §§ 7B-1111(a)(1), (2), (6). "[A] finding of only one ground is necessary to support a termination of parental rights[.]" *In re A.R.A.*, 373 N.C. 190, 194 (2019).

"If [a] trial court's finding of fact . . . is supported by clear, cogent, and convincing evidence[, it will be] deemed conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520 (2023)

4

(internal quotation omitted). "[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate [a] respondent's parental rights." *In re B.E.*, 381 N.C. at 734–35 (citation omitted). "All findings of fact which are not challenged by a respondent are binding on appeal." *In re G.B.*, 377 N.C. 106, 111 (2021). "We review whether the findings of fact support the conclusions of law, and conclusions of law are reviewed de novo." *In re S.R.*, 384 N.C. at 520 (citation omitted).

With respect to the trial court's determination under Section 7B-1111(a)(1), Mother argues the trial court's finding of fact number 28, finding Melody to be a neglected juvenile, was unsupported by findings of fact.

"Subdivision 7B–1111(a)(1) authorizes the trial court to terminate parental rights if '[t]he parent has abused or neglected the juvenile" as defined in N.C.G.S. § 7B–101.' " *In re D.L.W.*, 368 N.C. 835, 843 (2016) (citing N.C.G.S. § 7B–1111(a)(1) (2015)). According to section 7B-101, a neglected juvenile is one who "does not receive proper care, supervision, or discipline" from a parent or guardian, or one who "lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B–101(15). "Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing[.]" *In re D.L.W.*, 368 N.C. at 843. "[I]f the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *Id.* "When determining whether future neglect is likely, the trial court must consider

5

evidence of relevant circumstances or events that existed or occurred either before or after the prior adjudication of neglect." *In re K.N.*, 373 N.C. 274, 282 (2020) (citation omitted). "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212 (2019) (citation omitted). "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." *In re Ballard*, 311 N.C. 708, 715 (1984).

Here, Mother challenges several findings of fact as not supported by clear and convincing evidence. However, Mother's arguments mainly take issue with the wording of the findings and do not demonstrate any absence of evidence to support the findings. For example, she challenges the portion of Finding of Fact No. 11 which states that she "failed to comply with the case plan." She argues this is "misleading" because she did complete some components of her case plan. But other findings describe in detail the portions of her case plan that she did and did not complete. She challenges Finding of Fact No. 14, where the trial court found Mother did complete some parenting classes but did not complete the entire program. Mother contends this is "misleading" because she completed Phase I of the program but could not complete Phase II because she was not allowed to visit her daughter, something required for Phase II. But the trial court's finding is supported by the evidence: it shows Mother did not complete the entire parenting program. Her other challenges

to findings of fact are similar, and we will not address each separately, but all the trial court's findings were supported by the evidence.

The trial court made extensive findings in support of its determination that grounds existed to support the termination of Mother's parental rights based on neglect. Mother has ongoing untreated mental illnesses which she declines to admit exist and treat. Mother also failed to meet numerous goals set out in her case plan including completing a parenting education program, providing the court with financial records, and failing to pay reasonable portions of the cost of care for Melody. All of these facts demonstrate neglect and a failure to make progress to remedy such neglect.

We conclude the trial court's determination that Melody is a neglected juvenile under N.C.G.S. § 7B-1111(a)(1) is supported by clear, cogent, and convincing evidence. Thus, we affirm the trial court's order.

Because we affirm the trial court's determination that Melody is a neglected juvenile, we need not review the remaining two grounds to support the termination of parental rights.

### III. Conclusion

For the foregoing reasons, we hold the trial court did not err by terminating Mother's parental rights.

AFFIRMED.

Judges STROUD and MURRY concur.

Report per Rule 30(e).

No. COA25-480 – *In re: M.H.*

STROUD, Judge, concurring in result only.

For the reasons stated in my separate opinion in *In re: J.R.T.*, I concur in the result only. *See* ___ N.C. App. ___,  928 S.E.2d 532, 2026 WL 1020606 (2026) (Stroud, J., concurring in result) (unpublished).[3]  As I said there: "[N]o court or party should rely on this unpublished opinion under Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure." *Id.* at *6 (Stroud, J., concurring in result)*; see also* N.C. R. App. P. 30(e)(3) ("If a party believes . . . that an unpublished opinion has precedential value to a material issue in the case and that there is no published opinion that would serve as well, the party may cite the unpublished opinion . . . .").  I write again, briefly, to explain why.

First, the majority's factual background is not entirely accurate.  Some of its facts are taken from DHHS court reports during the initial neglect-and-dependency adjudication—facts the termination order does not address.  Others are plucked from the transcripts.  But when the findings of fact are not challenged on appeal, this Court considers the facts the trial court found, not the testimony of witnesses or snippets from earlier DHHS reports that are not mentioned in the termination order.  *See, e.g.*, *In re J.S.*, 374 N.C. 811, 814, 845 S.E.2d 66, 70 (2020) ("We review a district court's

---

[3] I appreciate the irony of citing another unpublished opinion, but there is no need to repeat my rationale when my opinion in *In re J.R.T.* is available for review.

adjudication under [Section] 7B-1111(a) 'to determine whether *the findings* are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' " (citation and brackets omitted) (emphasis added)).

The summary of facts is important because the record is sealed. The records, transcripts, and briefs in juvenile cases are not public, so the opinion is the only window into the case for anyone who later seeks to rely on it or distinguish it. *See* N.C. Gen. Stat. § 7B-2901(a) (2025) ("The clerk shall maintain a complete record of all juvenile cases filed in the clerk's office alleging abuse, neglect, or dependency. The records shall be withheld from public inspection and . . . may be examined only by order of the court. . . ."); N.C. R. App. P. 42(b)(1) ("By virtue of this subsection, items filed with the appellate courts are under seal in the following matters: (1) Appeals filed under [North Carolina General Statute Section] 7B-1001 . . . ."). And to such a reader—one without access to the sealed record—the majority's reliance on materials outside the order would not be apparent. An appellate court should thus take special care, in a case with a sealed record, to describe accurately the pertinent facts of the case on appeal.

Second, the majority addresses only Mother's argument that "[c]ertain findings are not supported by clear and convincing evidence"—and even then, only in general terms. It never analyzes her challenges to the ultimate findings and conclusions of law. For example, Mother's main argument about neglect: that "the trial court's ultimate [f]inding of [f]act . . . 28 reflects a misapprehension of law and therefore

cannot support the conclusion of law that the ground of neglect exists to support the termination of [Mother]'s parental rights." She challenges the italicized portion of finding 28:

> 28. Grounds exist to terminate the parental rights of [Mother], as to the juvenile, pursuant to [North Carolina General Statute Section] 7B-1111 (a)(1), as they relate to the juvenile, given that the parent neglected the juvenile, the neglect continues to date, and there is a likelihood of the repetition of neglect if the juvenile were returned to any parent, as follows:
>
> . . . .
>> b. *[M]other's neglect of the juvenile has been ongoing since removal and has continued through the present date, including but not limited to her failure to adequately address [M]other's mental health issues and parenting issues.*

Mother contests this finding on the ground that Melody was no longer living with her, and that the trial court therefore had to assess the likelihood that neglect would recur based on current circumstances. Citing *In re D.L.W.,* she contends that the court failed to address "a likelihood of repetition of neglect." 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) ("Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." (citation omitted)).

Mother's argument reads this portion of finding 28 in isolation. The trial court also made detailed findings regarding Mother's continuing serious mental illness and her refusal of treatment:

20. There are concerns that remain about the nature of [Mother]'s mental health. [Mother]'s delusions impact [Melody]'s emotional wellbeing. [Mother's] delusions impair her ability to provide a healthy and safe place for [Melody]. [Mother] refuses to take medications needed to address her mental health and delusion disorder and makes claims that her mental health issues are nothing more than a ruse so that she can be compensated by the federal government for her work as an intelligence agent. [Mother] claims that her entire mental health record was fabricated in conjunction with the federal government to disguise her work and payment as a secret agent. The [c]ourt does find that [Mother]'s testimony is not credible and there was no evidence presented to this Court that any of the claims testified to by [Mother] were true. [Mother]'s untreated delusional disorder is harmful to [Melody] and neglects [Melody]'s well-being. [Mother] claims that she works for the U.S. government, the British Government and United Nations as an intelligence agent. [Mother] believes that she has a remote romantic relationship with Alex Younger, a British intelligence officer and former chief of Ml6. [Mother] claims that her work requires her or required her to infiltrate the family of [Father], the father of, the minor child subject to this action. [Mother] has beliefs that the child was kidnapped and given to the family that she was asked to infiltrate. . . . [Mother] claims that she was infected with a parasite with the consent of her mother . . . . [Mother] also claims that the child subject to this action was also infected in utero. And that other members of her family were infected with this parasite or a parasite similar to what was [Mother] was injected with. . . . . The [c]ourt strongly sees the need for the Mother to have her mental health treated but the Mother refuses to comply. [Mother] entered into the case plan on May 5, 2020 and was given several referrals in which she did not follow through with. [Mother] was given from May 5, 2020 to August 2023 to work the case plan and follow up with the referrals to receive mental health care and medication management to address her mental health needs and [Mother] did not follow though with any of it. Since entering the Guilford County Jail in August of 2023, there

> has been some compliance with the jail case plan, but [Mother] still lacks in addressing the mental health component which this [c]ourt feels is the most concerning to the safety and well-being, both physically and emotional well-being of the minor child at this time.

Read together with the trial court's other twenty-nine findings of fact, this finding supports its ultimate finding of fact and conclusion on neglect—including its conclusion on the likelihood that neglect would recur. *See In re M.S.E.*, 378 N.C. 40, 48, 859 S.E.2d 196, 205 (2021) ("A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." (citation omitted)).

For these reasons, I concur in the result only, and I again discourage any future citation of this case under Rule 30(e)(3).