IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-378

No. COA21-681

Filed 7 June 2022

Duplin County, No. 10 JT 02

IN RE: S.O.C. A Minor Juvenile.

Appeal by Respondent-Mother from Order entered 22 July 2021 by Judge Robert Gilmore in Duplin County District Court. Heard in the Court of Appeals 6 April 2022.

> *Elizabeth Myrick Boone for petitioner Duplin County Department of Social Services.*
>
> *Benjamin J. Kull for Respondent-Mother.*
>
> *Brian C. Bernhardt, Attorney for Guardian ad Litem*

HAMPSON, Judge.

**Factual and Procedural Background**

Respondent-Mother appeals from the trial court's Judgment Terminating Parental Rights entered 22 July 2021, which adjudicated grounds to terminate Respondent-Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (6) and further determining it was in the best interests of the juvenile to terminate

Respondent-Mother's parental rights.[1]   The Record tends to reflect the following:

Respondent-Mother is the mother of Samuel.[2]  On 30 January 2018, the Duplin County Department of Social Services (DSS) filed a Juvenile Petition (Petition) alleging Samuel was neglected as defined by N.C. Gen. Stat. § 7B-101.

The Petition alleged that on 29 January 2018, DSS launched an investigation after Samuel reported that his older brother choked him with a belt causing Samuel to develop red marks on his neck and also placed a hand over Samuel's mouth causing him to almost pass out.  Samuel reported that when he screamed for help, Respondent-Mother came into his bedroom.  However, after Respondent-Mother evaluated the situation, she felt the juveniles "were fine" so she left the juveniles alone and did not seek medical treatment.  Respondent-Father was home but also did not address the incident.  The DSS report noted that a prior 21 November 2012 trial court order required Respondent-Mother to be supervised with the juveniles at all times.

On 2 February 2018 the trial court entered a Non-Secure Custody Order granting non-secure custody to DSS.  On 4 April 2018, the trial court entered an Order adjudicating Samuel neglected as defined by N.C. Gen. Stat. § 7B-101.  In its

---

[1] Respondent-Father did not appeal the TPR.

[2] The juvenile is referred to by the parties' stipulated pseudonym.

Disposition Order, the trial court ordered Respondent-Mother to obtain a psychiatric evaluation, an independent parenting evaluation, and to continue receiving intensive in-home services.

¶ 5    Respondent-Mother submitted to an individual Psychological Assessment at the Waynesboro Family Clinic with Dr. James T. Smith  on 8 November 2018 (the Smith Evaluation).  During the Smith Evaluation, Respondent-Mother completed an Adaptive Behavior Assessment System (ABAS) and Slosson Intelligence Test (SIT) to "determine her IQ and level of adaptive behavior so that her capacity to regain custody and appropriately parent her children could be determined."

¶ 6    Respondent-Mother and her children also submitted to a Child/Family Evaluation with Dr. Kristy Matala at Matala Psychological Services (the Matala Evaluation).   The Matala Evaluation consisted of interviews with Respondent-Mother and her children which occurred over multiple sessions from 2 October 2018 to 12 November 2018.  The Matala Evaluation indicated Respondent-Mother had "a need for . . .  a competent supervisor who can act as a guardian by providing care to the children."

¶ 7    On 16 September 2020, approximately two years after the Matala and Smith Evaluations, the trial court entered a Six Month and Permanency Planning Review Order pursuant to N.C. Gen. Stat. § 7B-906.1.  As part of the Order, the trial court reviewed the 2018 Smith Evaluation, which stated:

a. That Respondent-Mother's adaptive behavior functioning is in the low to below average range;

b. That Respondent-Mother has a Mild Intellectual disability, and is unlikely to progress beyond the 6th grade level in academic subjects; and

c. That Respondent -Mother should be supervised while caring for her children.

The trial court also found that, due to the COVID-19 pandemic, Respondent-Mother's visitations were telephonically held and that "Respondent-Father is now required to initiate all phone calls [as] calls from Respondent-Mother have resulted in upsetting the juveniles." The trial court found the conditions which led to removal still existed and that it was in the best interest of the Juveniles to remain in DSS custody. The trial court Ordered Samuel's primary permanent plan as custody to a relative or other suitable person and for his secondary permanent plan to be reunification.

The trial court entered an Order of Continuance on 11 January 2021, and on 14 January 2021, the trial court entered an additional Six Month and Permanency Planning Review Order. The trial court found Respondent-Mother remained unemployed and continued to initiate phone calls with the juveniles against their previous Order. The trial court also found that a potential placement Respondent-Mother supplied to the trial court for evaluation "informed the Department she was adopting a six-week-old baby and would not be a possible placement for the

Juveniles." The trial court found that "the best plan of care to achieve a safe, permanent home for Samuel within a reasonable period of time is a primary plan of adoption . . . and a secondary plan of reunification." The trial court ordered Samuel's primary permanency plan changed to adoption and maintained his secondary permanency plan as reunification.

¶ 10 On 23 February 2021, approaching three years after the trial court adjudicated Samuel as neglected, DSS filed a Petition for the Termination of Parental Rights. In this Petition, DSS alleged grounds existed to terminate Respondent-Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6) as follows:

> 12. That clear and convincing facts sufficient to terminate Respondent-Mother's parental rights exist and are specifically as follows:
>
> a. That the juvenile has been adjudicated to be a neglected juvenile as defined by N.C. Gen. Stat. §7B-101[15], having been so adjudicated in an Order entered April 4, 2018;
> b. That the juvenile is neglected as defined by N.C. Gen. Stat. §7B-101, and there is a high probability of continued neglect . . . .
>
> d. That the Respondent-Mother has willfully left the juvenile in foster care or placement outside of the home for more than twelve (12) months without reasonable progress under the circumstances being made in correcting those conditions which led to the removal of the juvenile. . .
>
> f. That the Respondent-Mother is incapable of providing for the proposed care and supervision of the juvenile, such that the juvenile is a neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101, and that there is a reasonable probability

that such incapability will continue for the foreseeable future.

The trial court conducted a hearing on the Petition to Terminate Parental Rights on 9 June 2021. On 22 July 2021, now more than three years after the trial court adjudicated Samuel as neglected, the trial court entered its Judgment Terminating Parental Rights. In its Judgment, the trial court made Findings of Fact related to the family's history with DSS between 2008 and 2018. As it relates to Respondent-Mother, these findings included:

> 10. That the Juvenile has been under the legal custody of the Duplin County Department of Social Services since January 29, 2018.
>
> 11. That the Respondent Parents have an extensive history with the Duplin County Department of Social Services Chat pre-dates the Juvenile's birth which includes:
>
> > a. That on November 15, 2008 the Department received a neglect report. The report was substantiated for injurious environment (domestic violence).
> >
> > b. That on December 04, 2009 the Department received a report for improper medical care which was substantiated. On January 7, 2010 the children were removed from the home and placed into foster care due to concerns of lack of heat in the home, roach infestation, significant medical needs of the children, and failure to thrive diagnosis for two of the three minor children. . . . On February 2, 2011, the court ordered that physical and legal custody be given back to the parents and the case was closed,
> >
> > c. That on September 1, 2010, the Department received a neglect report regarding the family. The family was found to be in need of services and case was transferred to case

management,

d. That on May 23, 2011, the Department received an abuse and neglect report regarding the family. . . . The case was substantiated for abuse and neglect (physical) . The children were placed into foster care and it was adjudicated on September 28, 2011. On November 21, 2012, the court ordered that the legal and physical custody be given back to [Respondent-Parents]; that [Respondent-Mother] have supervised visitation with the juveniles and that [Respondent-Mother] had to be supervised at all times . . .

e. That on May 1, 2012, the Department received a neglect/abuse report stating that [Samuel] reported that his father . . . had spanked him on the butt. . . . . The Social Worker did observe a bruise on his butt that appeared to be a few days old. The case was substantiated and closed,

f. That on June 4, 2013, the Department received a report of abuse and neglect. The case was substantiated and sent to case management. Over the course of the case the parents completed parenting [sic] and . . . mental health evaluations through New Dimensions. The case management case was closed,

g. That on August 15, 2013 the Department received a neglect report. . . . The report was substantiated and sent to case management on September 12, 2013. The case was later closed on January 21, 2014.

h. That on November 20, 2017, the Department received a neglect report regarding the family. . . .

i. That on January 29, 2018, the Duplin County Department of Social Services received a neglect report . . . .

¶ 12    The trial court also set out the findings from the 2018 Smith Evaluation:

> a. That Respondent-Mother's IQ as measured with the S[I]T, is 50, based on a comparison of her chronological age and her mental age, estimated to be 8 years and 3 months;
>
> b. That the score, coupled with the adaptive behavior scores places Ms. Capitano in the [range] of Mild Intellectual Disability;
>
> c. That persons with such Mild Intellectual Disability can benefit from training in social and occupational skills but are unlikely to progress beyond the sixth-grade level in academic subjects;
>
> d. That Ms. Capitano is seeking to regain custody of her four children. It is recommended that this is a reasonable request which should be supported at a level that considers her level of disability; and
>
> e. That the Respondent-Mother Should be supervised while caring [for] her children, given her impaired level of cognitive functioning.

The trial court also found the 2018 Matala Evaluation reported:

> 13. That the Respondent Parents submitted to a child forensic evaluation on October 2, 2018. The findings expressed doubts that the parents had the ability to provide a safe, stable environment [for] the children and meet all of their special needs without a competent supervisor, who can act as a guardian by providing care to the children.

Lastly, the trial court found "the prior adjudication of neglect was admitted into evidence and was considered."

Based on these findings, the trial court concluded statutory grounds existed for the termination of Respondent-Mother's parental rights as alleged in the Petition in that:

a. That the juvenile has been adjudicated to be neglected as defined by N.C. Gen. Stat. §7B-101 and there is a high probability of a repetition of neglect;

b. That the Respondent-Mother has willfully left the juvenile in foster care or placement outside of the home for more than twelve (12) months without reasonable progress under the circumstances being made in correcting those conditions which led to the removal of the Juvenile; and

c. That the Respondent-Mother is incapable of providing for the proper care and supervision of the Juvenile, such that the Juvenile is a dependent Juvenile within the meaning of N.C. Gen. Stat. §7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future.

¶ 16 The trial court further concluded it was in the best interests of Samuel to terminate Respondent-Mother's parental rights and, ultimately, ordered Respondent-Mother's parental rights terminated as to Samuel. On 23 August 2021, Respondent-Mother timely filed Notice of Appeal.

## Issue

¶ 17 The dispositive issue on appeal is whether the trial court erred in adjudicating grounds to terminate Respondent-Mothers' parental rights under N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6) where the trial court did not base its Findings of Fact on conditions related to Respondent-Mother at the time of the termination hearing.

## Analysis

¶ 18 Jurisdiction for this appeal is granted by N.C. Gen. Stat. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2021). The standard of appellate review of an order adjudicating

grounds upon which to terminate parental rights is whether the trial court's findings

of fact are supported by clear, cogent, and convincing evidence and whether those

findings of fact support the conclusions of law. *In re Montgomery*, 311 N.C. 101, 111,

316 S.E.2d 246, 253 (1984).

> This Court reviews de novo the issue of whether a trial court's
> adjudicatory findings of fact are supported by its conclusion of law
> that grounds existed to terminate parental rights pursuant to
> N.C. Gen. Stat. § 7B-1111(a). Under a *de novo* review, the court
> considers the matter anew and freely substitutes its own
> judgment for that of the trial court.

*In re T.M.L.*, 377 N.C. 369, 2021-NCSC-55, ¶ 15 (internal citations and quotations

omitted).

¶ 19        In this case, the trial court concluded statutory grounds existed under N.C.

Gen. Stat. § 7B-1111(a) (1), (2), and (6) to terminate Respondent-Mother's parental

rights. Under N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6), the trial court may

terminate parental rights upon finding one or more of the following:

> (1) The parent has abused or neglected the juvenile. The juvenile
> shall be deemed to be abused or neglected if the court finds the
> juvenile to be an abused juvenile within the meaning of G.S.
> 7B-101 or a neglected juvenile within the meaning of G.S. 7B-
> 101.
>
> (2) The parent has willfully left the juvenile in foster care or
> placement outside the home for more than 12 months without
> showing to the satisfaction of the court that reasonable
> progress under the circumstances has been made in correcting
> those conditions which led to the removal of the juvenile. No
> parental rights, however, shall be terminated for the sole

reason that the parents are unable to care for the juvenile on account of their poverty.

. . .

(6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a) (2021).

Respondent-Mother contends the trial erred in terminating Respondent-Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6) as none of the trial court's adjudicatory Findings of Fact address the circumstances at the time of the hearing. Specifically, Respondent-Mother contends the trial court's findings only address circumstances which existed—at the latest—almost thirty-one-months prior to the termination of parental rights hearing.

The North Carolina Supreme Court recently addressed a similar argument in *In Re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102. There, the respondent argued *inter alia* a trial court's findings based on evidence of the circumstances more than 13 months prior to the termination hearing did not support the trial court's conclusion that grounds existed to terminate Respondent-Mother's parental rights under N.C. Gen.

Stat. § 7B-1111(a) (1), (2), and (6). The Supreme Court agreed and reversed the adjudication of grounds to terminate parental rights. *Id*. at ¶ 34.

¶ 22 With respect to the adjudication of neglect as a ground to terminate parental rights under Section 7B-1111(a)(1), the Court observed: "It is well established that when deciding whether future neglect is likely, '[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding.' " *Id.* at ¶ 26, (quoting *In* re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227 (1984)). The Court determined that as the only evidence presented incorporated only the allegations of the Petition filed more than 13 months prior to the hearing, and that those allegations "do not shed any light on respondent's fitness to care for [the juvenile] at the time of the termination hearing, and the trial court erred by relying on the stale information in the petition as its only support for this ground." *Id.* at ¶ 27.

¶ 23 Similarly, with respect to Section § 7B-1111(a)(2), the Supreme Court noted:

> Termination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*Id.* at ¶ 30 (quoting *In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792 (2020)). "A parent's reasonable progress 'is evaluated for the duration leading up to the hearing on the

motion or petition to terminate parental rights.' " Id. at ¶ 30 (quoting *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66 (2020)).  Thus, the trial court's adjudication of grounds to terminate parental rights based solely on evidence of circumstances more than 13 months prior was also in error.

¶ 24        Additionally, as it relates to an adjudication of dependency as a ground to terminate parental rights, the Supreme Court likewise recognized Section 7B-1111(a)(6) requires a showing:

> (1) "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and ... there is a reasonable probability that such incapability will continue for the foreseeable future[,]" and (2) "the parent lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-1111(a)(6) (2019).

*Id*. at ¶ 31.  Moreover, "Like the adjudication of grounds pursuant to subsections (a)(1) and (2), an adjudication of dependency as a ground for termination under subsection (a)(6) must be based on an examination of the parent's ability to care for and supervise their child at the time of the adjudication hearing." *Id*.  Therefore, as with the other grounds, the trial court's findings related to circumstances more than 13 months prior did not support the trial court's adjudication of dependency.  *Id*.

¶ 25        Ultimately, the Supreme Court summarized its holding on these points:

> by relying solely on the evidence from a termination petition that was filed thirteen months prior to the hearing, the trial court erred by concluding grounds for termination existed under

subsections (a)(1), (2), and (6), since each of those grounds requires evaluating the evidence as of the time of the termination hearing.

*In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 34.

In the case before us, the trial court based its July 2021 determination that grounds existed to terminate Respondent-Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6) based on Findings of Facts from almost 31 months prior to the termination hearing. Indeed, most of the trial court's relevant findings consist of reciting case history from 2008 to 2018 and the findings from the 2018 Smith and Matala reports. The trial court made no findings that would support a determination that at the time of the June 2021 hearing there was a likelihood of repetition of neglect. The trial court also made no findings evaluating Respondent-Mother's progress, if any, to correct the conditions resulting in the removal of Samuel from her custody in the time period leading up to the hearing. Finally, the trial court also made no findings which reflect any examination of the Respondent-Mother's ability to care for and supervise Samuel at the time of the adjudication hearing.

Thus, under *In re Z.G.J.*, the trial court's findings—in this case based on circumstances pre-dating the termination of parental rights hearing by almost 31 months or more—failed to evaluate the evidence at the time of the termination of parental rights hearing. Thus, in turn, those findings cannot support the trial court's conclusion grounds existed to terminate Respondent-Mother's parental rights under

N.C. Gen. Stat. § 7B-1111(a) (1), (2), and (6). Consequently, the trial court erred in adjudicating grounds existed to terminate Respondent-Mother's parental rights. *See Id*. at ¶ 34. As such, we vacate the trial court's Judgment Terminating Parental Rights and remand this matter to the trial court to determine (1) whether the existing record contains evidence from which it may make Findings of Fact as to the circumstances at the time of the termination hearing and, if so, (2) to make a new determination as to whether grounds exist to terminate parental rights and, in turn, (3) enter the disposition it deems in the best interest of Samuel.[3] If the trial court determines the evidence does not support grounds for terminating Respondent-Mother's parental rights, the trial court should dismiss the Petition.

## Conclusion

Accordingly, for the foregoing reasons, we vacate the trial court's 22 July 2021 Judgment Terminating Parental Rights and remand this matter to the trial court to conduct further proceedings as set forth herein.

VACATED AND REMANDED.

Judges DILLON and DIETZ concur.

---

[3] In remanding this matter to the trial court, we also note that in adjudicating dependency as a ground to terminate parental rights, the trial court also failed to make any finding the "the parent lacks an appropriate alternative child care arrangement" as required under N.C. Gen. Stat. § 7B-1111(a)(6) (2019).