An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-349

Filed 15 April 2026

Henderson County, Nos. 21JA000001-440, 21JA000002-440, 21JA000003-440

IN THE MATTER OF: A.N.T., C.R.T., L.C.T.

Appeal by respondent appellant from order entered 16 December 2024 by Judge Abe Hudson in District Court, Henderson County. Heard in the Court of Appeals 11 March 2026.

> *Jane R. Thompson for petitioner-appellee Henderson County Department of Social Services.*
>
> *GAL Appellate Counsel, by Matthew D. Wunsche, for guardian ad litem.*
>
> *Parent Defender Annick Lenoir-Peek for respondent-appellant-mother.*

STROUD, Judge.

Respondent Mother appeals from an order terminating her parental rights to her three children: Lucas, Curtis, and Alice.[1] Mother's appellate counsel filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Because we identify no error below, we affirm.

## I. Background

---

[1] We use pseudonyms to protect the minor children's identities.

Henderson County Department of Social Services (DSS) first became involved with this family in July 2020, after the father was found impaired at a park while caring for the children. He entered residential treatment, and the children were placed with Mother. But that placement failed: Mother struggled with drug and alcohol use, lacked mental health treatment, and could not manage the children's behaviors. The children were eventually placed with relatives.

When one relative could no longer care for the two boys, DSS filed a juvenile petition on 12 January 2021 alleging that one-year-old Lucas, three-year-old Curtis, and four-year-old Alice were neglected juveniles. The court entered an order adjudicating all three children neglected on 22 March 2021 and awarded DSS nonsecure custody. In its dispositional order entered the same day, the court required Mother to complete several tasks "[t]o achieve reunification": obtain a comprehensive clinical assessment (CCA) and comply with its recommendations, submit to random drug screens, complete parenting classes, pay child support, demonstrate the ability to provide appropriate care for the children, maintain stable income, and secure safe housing.

On 26 May 2022, after father completed treatment and maintained sobriety for twenty months, the trial court returned custody to him. Mother received one hour per week of supervised visitation.

On 8 August 2023, father was found dead of a suspected fentanyl overdose. DSS filed a dependency petition and obtained nonsecure custody of the children that

same day. A month later, at a continued nonsecure custody hearing, the court returned the children to Mother.

Four days later, Mother took the children to a pediatrician's office. A law enforcement officer present at the office found Mother in the bathroom with one of the children and observed evidence that she had been smoking fentanyl. She was arrested for felony drug possession, drug paraphernalia, and misdemeanor child abuse. DSS filed a new petition alleging neglect and dependency, and the children returned to DSS's custody. Hair follicle testing the next day showed all three children were positive for fentanyl.

On 26 October 2023, the children were adjudicated neglected and dependent by consent. The court's dispositional order required Mother to comply with essentially the same reunification tasks noted above.

At the first permanency planning hearing on 25 January 2024, neither Mother nor her counsel appeared. The trial court found that Mother had not completed her CCA, had either missed drug screens or tested positive for fentanyl, had not completed parenting classes, had not paid child support, and had not shown proof of employment. The court set the children's primary permanent plans as reunification, with secondary plans of adoption. It also reduced Mother's visitation to one hour biweekly.

Between January and April 2024, Mother's situation further deteriorated. At the second permanency planning hearing on 18 July 2024, Mother appeared for

calendar call but left before her case was called. The trial court found that since the prior hearing, Mother had missed six drug screens and tested positive for fentanyl at a seventh, had attended only one parenting class, and had visits with the children that remained "very chaotic." It changed the children's primary permanent plans to adoption, with secondary plans of reunification.

On 17 September 2024, DSS petitioned to terminate Mother's parental rights under North Carolina General Statute Sections 7B-1111(a)(1), (a)(2), and (a)(3). *See* N.C. Gen. Stat. § 7B-1111 (2023) (Grounds for terminating parental rights). The trial court held a termination hearing on 21 November 2024. Social worker Chrissie Moore testified for DSS and Mother testified on her own behalf.

On 16 December 2024, the trial court entered an order terminating Mother's parental rights. Among its findings: Mother did not complete her CCA until two weeks before the hearing and was not truthful during the assessment about her substance use. She had not engaged in mental health services, medication management, or substance abuse treatment. She had not consistently submitted to random drug screens—she had not taken a drug screen for DSS since February 2024—and had not produced any negative drug screens throughout the case. She had not completed parenting classes, had not demonstrated the ability to obtain and maintain consistent income, and had not paid child support. And although Mother consistently attended supervised visits, the court found that she routinely displayed

inappropriate parenting, made false promises to the children, and did not participate in their medical needs.

Based on these and other findings, the trial court concluded that grounds existed under Sections 7B-1111(a)(1), (a)(2), and (a)(3) to terminate Mother's parental rights. Turning to the children's best interests, the court found that all three had bonded with their respective caregivers, who hoped to adopt them, and concluded that termination was in the children's best interests.

Mother timely appealed.

## II.     Analysis

Mother's counsel filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 3.1(e) ("When counsel for the appellant concludes that there is no issue of merit on which to base an argument for relief, counsel may file a no-merit brief. . . . In the no-merit brief, counsel must identify any issues in the record on appeal that arguably support the appeal and must state why those issues lack merit or would not alter the ultimate result."). Counsel also informed Mother in writing of her right to file a *pro se* brief and instructions for doing so.

Mother's counsel identified two potential issues: (1) whether the trial court erred in terminating Mother's parental rights because the evidence failed to support its findings of fact and those findings failed to support the conclusions of law, and (2) whether the trial court abused its discretion in concluding that termination of

Mother's parental rights was in the children's best interests. We independently review the issues raised in the no-merit brief. *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E. 2d 341, 345 (2019).

A termination of parental rights proceeding has two stages: adjudication and disposition. *In re S.C.C.*, 379 N.C. 303, 308, 864 S.E.2d 521, 525 (2021). At the adjudicatory stage, the petitioner must prove by "clear, cogent, and convincing evidence" at least one ground for termination under Section 7B-1111(a). *In re G.B.*, 377 N.C. 106, 111, 856 S.E.2d 510, 514 (2021) (citation omitted). We review a trial court's adjudication "to determine whether the findings are supported by clear, cogent[,] and convincing evidence and the findings support the conclusions of law." *Id.* (quoting *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019)).

If the court finds at least one ground to terminate parental rights under Section 7B-1111(a), "it proceeds to the dispositional stage where it must determine whether terminating the parent's rights is in the juvenile's best interest." *In re C.B.*, 375 N.C. 556, 559, 850 S.E.2d 324, 327 (2020) (citation and quotation marks omitted). We review that determination for abuse of discretion. *In re Z.A.M.*, 374 N.C. 88, 99, 839 S.E.2d 792, 800 (2020). Under that standard, "we defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 100, 839 S.E.2d at 800.

**A. Adjudication**

We start with the trial court's adjudication. A court may terminate parental rights for neglect under Section 7B-1111(a)(1) if the parent has neglected the juvenile under North Carolina General Statute Section 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1). A neglected juvenile includes one "whose parent, guardian, custodian, or caretaker does . . . not provide proper care, supervision, or discipline" or who "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2023).

The neglect must exist "at the time of the termination hearing." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713-15, 319 S.E.2d 227, 231-32 (1984)). When "the child has been separated from the parent for a long period of time," the petitioner must prove both "past neglect" and "a likelihood of future neglect by the parent." *Id.* The trial court must consider "evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing" when deciding whether future neglect is likely. *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citation omitted). And a "parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.S.E.*, 378 N.C. 40, 48, 859 S.E.2d 196, 205 (2021) (quoting *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916 (2020)).

Here, the trial court made 423 findings of fact in the adjudication section of its order. The findings focus largely on Mother's substance abuse and her failure to

comply with the tasks required under her case plan to achieve reunification with the children. *See id.*

The trial court found, in relevant part:

> 383. [Mother] has not consistently submitted to random drug screens, nor has she produced any negative drug screens.
>
> 384. She has not taken a drug screen for [DSS] since February 2024.
> . . . .
>
> 386. [Mother] has not completed parenting classes.
> . . . .
>
> 389. While [Mother] has consistently attended supervised visits with the juveniles, she has routinely displayed inappropriate parenting during the visits.
> . . . .
>
> 391. [Mother] once told the juveniles during a visit that she would not come back if they continued misbehaving.
>
> 392. [Mother] makes false promises to the juveniles during visits.
> . . . .
>
> 395. [Mother] does not participate in the juveniles' medical needs. She does not attend appointments, despite being informed of them at each [child and family team meeting].
> . . . .
>
> 397. Based on [Mother's] lack of involvement, it is unlikely that she could successfully manage the juveniles' treatment needs.
>
> 398. [Mother] has not demonstrated she can obtain and maintain a consistent income source to meet the basic needs of the juveniles.
> . . .

403. [Mother] provided no medical documentation to [DSS] or this [c]ourt as to why she would not be able to work or engage in her case plan services.
. . . .

415. [Mother] does not have a safe and appropriate home for the juveniles. [She] has consistently lived at the home of the maternal grandmother, along with other maternal relatives.

416. However, the [c]ourt has serious concerns about the safety of this residence.

417. . . . Moore requested a 911 call log for the residence. In the past year there have been multiple overdoses, as well as calls for domestic violence, missing person, animal enforcement, and weapons. In June 2024 alone there were four calls.
. . . .

422. The juveniles would be exposed to further neglect if they were returned to [Mother's] care.

These unchallenged findings support the trial court's conclusion that grounds existed for termination under Section 7B-1111(a)(1). Because termination of Mother's rights under that provision was supported by clear, cogent, and convincing evidence, we need not review her proposed challenges to the other grounds. *See In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53 ("[A]n adjudication of any single ground in [Section] 7B-1111(a) is sufficient to support a termination of parental rights.").

**B. Disposition**

Mother's counsel's second potential issue is whether the trial court abused its discretion in concluding that termination of Mother's parental rights was in the children's best interests. In making that determination, the trial court must consider:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2023). The termination order included detailed findings on each factor. The court found that five-year-old Lucas and "almost" seven-year-old Curtis had bonded with their foster parents and that their adoptions were "highly likely." It found that eight-year-old Alice had a "strong bond" with the parental relatives she was placed with and that they "wish[ed] to adopt her." The court did not abuse its discretion in determining that termination of Mother's parental rights was in the children's best interests.

### III.    Conclusion

We affirm the termination order.

AFFIRMED.

Judges ARROWOOD and WOOD concur.

Report per Rule 30(e).